*In re* MARRIAGE OF PATRICIA A. GARDNER, Petitioner-Appellant, and JACK R. GARDNER, Respondent-Appellee.

First District (5th Division)   No. 79-1702

Opinion filed June 20, 1980.

Nicholas Zagone, of Chicago, for appellant.

Charles O. Brizius, of Brizius & Nixon, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Petitioner appeals the order of the trial court directing respondent to pay $1500 for the first-year college expenses of their 18-year-old son and denying maintenance and attorney's fees. She contends that the issuance of the order constituted an abuse of discretion. We affirm the court's order with respect to college expenses and maintenance but reverse and remand on the question of attorney's fees.

The parties were divorced in 1964, and the decree of divorce expressly reserved the question of child support. Between 1964 and 1973, respondent did not contact his son and did not pay any child support or contribute anything else for his support. Petitioner testified that although she made attempts to contact respondent during this period, she was unsuccessful and, as a result, could not reach any agreement on child support. In 1965, petitioner remarried and in 1968, respondent remarried.

In 1973, the parties met at a tollway restaurant in Warren, Ohio. Petitioner testified that the meeting was accidental, but respondent testified that the meeting was in response to telephone conversations which had been initiated by petitioner. The parties talked about their son at the meeting. Respondent testified that petitioner told him that their son did not know that he existed, their son thought that her second husband was his father, and she wanted her second husband to adopt the boy. Respondent said that petitioner asked him if he would consent to the adoption and that he replied that he would think about it. Petitioner denied that she had spoken to respondent about any of these matters. In either event, the parties remained in touch with each other after this meeting. In 1975, petitioner met respondent and his wife at O'Hare airport and there, according to respondent's testimony, once again discussed the adoption. The parties stipulated that if respondent's wife were called to testify, she would confirm that this discussion had occurred. Petitioner, however, denied any such discussion.

In 1976, petitioner located respondent's residence and thereafter filed a petition for child support. On May 28, 1977, the trial court entered an order awarding petitioner $9,500 for retroactive child support covering the period of the date of the judgment of divorce until May 27, 1977, $50 per week child support until the child was 18 years of age or otherwise emancipated, and $750 in attorney's fees.

On July 20, 1979, petitioner filed a petition seeking to compel

respondent to pay for the education and maintenance of their child, who was then 18 years of age, and for attorney's fees. After a hearing, the trial court directed the respondent to pay $1500 towards the child's first-year educational expenses, denied the request for maintenance, and summarily denied the request for attorney's fees.

OPINION

Petitioner contends that the trial court abused its discretion in ordering respondent to pay only $1,500 towards their son's first-year college expenses and in denying maintenance. She claims that the abuse of discretion occurred when the court considered certain irrelevant matter, including the theory that petitioner's present husband had made a "de facto" adoption of the boy, before denying maintenance and ordering payment for educational expenses in an amount which was grossly disproportionate to both respondent's ability to pay and petitioner's inability to pay.

■■ Section 513 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 513) provides, in pertinent part, that:

> "The Court also *may* make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:
>
> (a) The financial resources of both parents.
>
> (b) The standard of living the child would have enjoyed had the marriage not been dissolved.
>
> (c) The financial resources of the child." (Emphasis added.)

This provision by its terms makes the award of money for the maintenance and/or education expenses of an 18-year-old child discretionary with the trial court. (See *Singer v. Singer* (1979), 70 Ill. App. 3d 472, 388 N.E.2d 1051.) An abuse of discretion in not awarding money for maintenance and educational expenses will not be found unless the record demonstrates that "the financial resources of both parents, the standard of living during the marriage and the financial resources of the child were such as to require a party to provide for the education [and maintenance] of his nonminor children." *Westerberg v. Stephens* (1979), 76 Ill. App. 3d 119, 123, 394 N.E.2d 875, 878. See also *Singer v. Singer.*

■■ Our review of the hearing which was conducted on the petition and the court's comments regarding the evidence adduced at the hearing leads us to the conclusion that the court did not abuse its discretion in

awarding only $1500 for first-year educational expenses and nothing for maintenance expenses. Evidence adduced at the hearing indicated that the one-year cost of college for the parties' son was anywhere from $3,200 to $3,900. Though the evidence indicated that respondent had made over $16,000 for the first half of 1979, it did not establish that he had any disposable income to contribute towards his son's education. In fact, respondent, who had one natural child and one adopted child with his second wife, testified that he had nothing left from his paycheck after supporting his second family. This testimony was not rebutted at the hearing. (See *Singer v. Singer.*) He further testified that he and his second wife, who was employed, owed $33,000 on a mortgage for their home and that he had no savings or checking accounts. The evidence indicated that in 1978 petitioner made approximately $6200 from a company which she owned. Petitioner, who had no children by her second husband, testified that she was unable to pay for any of her son's college expenses. She further stated that she and her second husband, who was also employed, owed $58,000 on a first mortgage and $10,000 on a second mortgage of their home. The parties' son, who graduated in the upper third of his high school class, testified that he could not file his college application until he obtained the tuition money. He stated that he had worked two or three hours a day while in high school and was at the time of the hearing working a full-time summer job. Nonetheless, no evidence had been adduced indicating the rate of pay which he was receiving. All that was established was that he had $9 in a savings account, owned a $1200 car for which he had contributed one-half of the purchase price, and was paying his mother back for the other half of the purchase price.

In considering the evidence, the trial court commented:

"So it's perfectly clear that, so far as Jack [the son] is concerned, the only real father is the one that is the functional father, is Mr. Thompson [petitioner's second husband].

And the question, therefore, under Section 513 is, what is the responsibility of this remote father for this boy. And the boy really isn't scarcely a son to him. But, that isn't the boy's fault. It's due to circumstances of his parents, over which he has no control.

* * *

I think that the concept of education stands on a different point from the obligation of support prior to age eighteen. I think, that the Court is suppose [*sic*] to take into account additional dimensions that are not present when you have a child who is a minor.

So here we have a situation. We have a mother who has a very limited income and who, in fact, supported this child all these

years. And then she got this retroactive child support, which I gather is paid over in a period of time.

* * *

Then she obtained $50.00 a week. You have a man who is working and his gross is very substantial judged against the need— against the income of the mother. But, the father has a second wife, they have a long term marriage.

* * *

Long term marriage, two children, and the fact that one is adopted, I don't think matters. The question then is, out of all of this, what is fair?

The boy now comes and says he wants a college education. And there is no question that the father of his economic bracket would be required to contribute towards the education of a son, who has the wishes and capacity to go to college.

What is appropriate in this kind of a situation where you have this relationship? Of course, one possible way would be to say— well, look at the functional family, and let's see. One possible way would be to let the functional family take care of its own. But, Mr. Gardner's obligation ceased at age eighteen when he finished high school.

But, I can't quite see it this way or I can't see that the boy is entitled to the full support that he will receive."

After making such comments and considering the fact that the parties' son was in the upper one-third of his class and thus possibly in a position to apply for a scholarship, the court made its ruling.

The court's ruling did not constitute an abuse of discretion, because as is indicated by its comments, it properly considered the factors mentioned in section 513 as well as other factors. Though the court did comment on the fact that respondent had become somewhat of a remote father, we cannot agree with petitioner's claim that the record shows that the court relied on that factor, to the exclusion of all other factors, in entering its order. The fact that the court entered an order directing respondent to pay $1500 for his son's first-year educational expenses belies such a claim. Therefore, in light of the evidence adduced at the hearing, we affirm the order of the trial court with respect to college expenses and maintenance.

We, however, reverse and remand the court's denial of attorney's fees because the court ruled without properly considering the question. After the court ruled that respondent should pay $1500 toward his son's first-year college expenses, the following colloquy occurred:

"Mr. Zagone [attorney for petitioner]: How about attorney's fees?

The Court: I am not going into that.

Mr. Zagone: I would like to be heard.

Mr. Brizius [attorney for respondent]: I also have a petition fo. fees. It's about the time we were here on July 11th because he wouldn't let her answer certain questions.

The Court: It's 5:30, I have other matters. I am sorry I have ruled."

■■ The trial court abused its discretion by refusing petitioner's attorney's request to be heard on the matter of attorney's fees in the manner in which it did so. Section 508 of the Illinois Marriage and Dissolution of Marriage Act (par. 508) provides for the awarding of attorney's fees "after due notice and hearing, and after considering the financial resources of the parties \* \* \*." Although the awarding of attorney's fees is within the sound discretion of the trial court and will not be reversed on review unless the court has clearly abused its discretion (*Donnelley v. Donnelley* (1980), 80 Ill. App. 3d 597, 400 N.E.2d 56), we find that the court's denial of petitioner's request for attorney fees, without first establishing some basis for such a denial, constituted such a clear abuse of discretion. Though evidence concerning the parties' financial resources was adduced at the hearing, no proper hearing was conducted on attorney's fees. Without either some further hearing on matters traditionally considered in awards of attorney's fees (see *Donnelley v. Donnelley*), or some record-based explanation by the trial court for its denial of attorney's fees, we believe that the court abused its discretion in its denial of the fees.

Affirmed in part; reversed and remanded in part.

LORENZ and MEJDA, JJ., concur.