*In re* MARRIAGE OF BETTY ANN HOUSTON, Petitioner-Appellee, and JACK HOUSTON, Respondent-Appellant.

Fifth District   No. 5—85—0687

Opinion filed December 11, 1986.

William W. Schooley and Kathryn P. Taylor, both of Law Offices of William W. Schooley, of Granite City, for appellant.

Margaret J. Walsh and Robert E. Wells, Jr., both of Pessin, Baird & Wells, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Respondent, Jack Houston, appeals from an order of the circuit court of St. Clair County finding him in contempt for failing to pay

petitioner, Betty Ann Houston, amounts due under a settlement agreement which had been incorporated into the judgment dissolving the parties' marriage. The amounts at issue were to meet the expense of sending Lisa, the parties' youngest daughter, to college. Respondent contends: (1) that he was denied the right to a full and fair hearing on his continued obligation, if any, to pay Lisa's educational expenses; (2) that the trial court's decision requiring him to make monthly payments toward Lisa's expenses "is contrary to the law and the evidence," and (3) that the trial court erred in holding him in contempt and ordering him to pay petitioner's attorney fees. We affirm.

In November of 1980, after dissolution proceedings had commenced, the parties entered into a settlement agreement which provided, *inter alia*:

> "that Jack Houston will pay to Betty Ann Houston the sum of $633 per month beginning November 14, 1980, for child support and maintenance, two-thirds of said sum being allocated to child support, and one-third thereof allocated as maintenance for a period of twelve months; and that on November 14, 1981, said Jack Houston shall pay to Betty Ann Houston the sum of $633 as child support and shall pay no further sums for maintenance; and that Jack Houston shall pay for the college expenses including tuition, room and board, books, laboratory fees or other expenses for his daughter, Lisa Houston, if she attends college; that Betty Ann Houston shall be permitted to retain the possession of the marital home located at R.R. #2, Box 96, New Athens, Illinois, including the 5.65 acres upon which it is located until June 1983 or if she decides not to live there, she can voluntarily give up said possession and whichever occurs first at that time the property shall be sold and the net proceeds thereof shall be divided one-half to Jack Houston and one-half to Betty Houston ***."

Petitioner subsequently moved to set aside the agreement on the ground that it was unconscionable. Respondent, however, argued that the agreement "was fair and there was no showing of fraud," and the motion was denied by the court in an order filed on March 22, 1983. Thereafter, the court expressly found that the agreement had been entered into freely and voluntarily and was not unconscionable. Accordingly, the agreement was approved, and its terms were incorporated into the judgment of dissolution, which was formally entered on June 7, 1983. This procedure was authorized by section 502 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 502). No appeal was taken by either party.

On February 16, 1984, petitioner filed a petition for a rule to show cause why respondent should not be held in contempt of court for failure to comply with certain terms of the dissolution judgment. That petition, as later amended, alleged that respondent had wilfully and contemptuously failed to comply with the provisions of the judgment of dissolution requiring him to pay child support, room and board and other expenses related to Lisa and that he refused to cooperate in the sale of the marital home. Respondent, in turn, filed a motion to modify the dissolution judgment, asserting that because he had been unable to find employment since January 1984, his support obligations for Lisa should be temporarily suspended or abated. Although the record is incomplete, we understand that a hearing was held in September of 1985 concerning disposition of the marital home. An order relating to that matter was entered by stipulation of the parties on September 12, 1985, and a hearing on the remaining issues was convened on October 2, 1985.

At the October 2 hearing, the trial court heard testimony from each of the parties. Various exhibits were admitted into evidence, petitioner's attorney testified regarding his fees, and arguments were made by counsel. The trial court then issued an order finding respondent in contempt for wilful violation of that portion of the dissolution judgment requiring him "to pay for the college expenses including tuition, room and board, books, laboratory fees or other expenses for his daughter, Lisa Houston, if she attends college." That order required respondent to pay petitioner $443.81 to reimburse her for the tuition and book fees she had advanced to Lisa for the fall, 1985, semester; $500 per month for Lisa's "room, board and other expenses," beginning in October 1985 and continuing until further order of the court; and $950 of petitioner's attorney fees. Respondent was found not to have been in contempt for the period extending from October 1983 through April 1985; petitioner's request that respondent be required to make retroactive payments was denied; and petitioner was ordered to pay the balance of her attorney fees and costs in the amount of $403. Respondent now appeals.

Respondent first contends that he was denied a full and fair hearing at the October 2 hearing in violation of his constitutional right to due process. We disagree. In *Pettigrew v. National Accounts System, Inc.* (1966), 67 Ill. App. 2d 344, 351, 213 N.E.2d 778, 782, the court described due process in this way:

"A fundamental requisite of procedural due process is that every man shall have the protection of his day in court and the benefit of an orderly proceeding according to the general law

or established rules; and that the hearing shall not be arbitrary, but rather shall afford to him an opportunity to be heard in his defense and shall assure to him an inquiry on the issues of the case, wherein judgment is rendered only after trial. There must be an intrinsic fairness of procedure by which any judgment, order or decree is rendered."

Respondent recites a litany of reasons why the October 2 hearing failed to comport with this standard. He claims that petitioner's attorney made groundless and disruptive objections and that the personal integrity of his attorney was impugned. He asserts the trial judge permitted evidence to be heard on petitioner's unsuccessful effort to have the settlement agreement set aside and on the problems with the sale of the marital home, when those issues were no longer in dispute, and he suggests that the trial judge improperly abandoned his judicial function and assumed the role of advocate when he asked some of his own questions to the witnesses and raised certain of his own objections to proferred testimony.

■ Relating the details of the particular instances raised by respondent would serve no useful purpose. After carefully reviewing the entire transcript of the October 2 hearing, we do not believe that the proceeding was in any way arbitrary or lacking in "intrinsic fairness." The actions of the trial judge were appropriate to his function as the trier of fact in this dispute. He treated the parties with an even hand, and we can find no indication that he had prejudged the merits of the case prior to hearing all the evidence. Respondent can point to no specific rules of practice or procedure which were violated. The objections interposed by counsel for petitioner were within the bounds of zealous advocacy. Although evidence adduced regarding the sale of the marital residence might properly have been limited by the court, we note that some confusion existed regarding the precise scope of the hearing, a problem for which respondent's attorney appears to be at least partially responsible. To be sure, this hearing was not without its flaws. Nevertheless, due process does not require that the opportunity to be heard will be conducted entirely free from error. (*Rhodes v. Anderson* (1976), 39 Ill. App. 3d 208, 210, 349 N.E.2d 113, 115.) Respondent was entitled to a fair trial, not a perfect one.

■ A further due process claim raised by respondent is that he was unfairly precluded from presenting evidence concerning Lisa's academic ability, academic standing, and intentions for continued study, as well as evidence as to the educational opportunities which had been afforded the parties' other children. Petitioner disputes the relevance of these matters. Whether evidence about them was improperly ex-

cluded need not, however, be addressed. The refusal to admit evidence, although perhaps error, will not support a reversal on the grounds that due process has been denied. *Rhodes v. Anderson* (1976), 39 Ill. App. 3d 208, 210, 349 N.E.2d 113, 115.

■ Respondent next argues that the law and evidence do not support the trial court's determination as to respondent's obligation to make monthly payments toward Lisa's expenses. Again we disagree. As a preliminary matter, we note that respondent misunderstands the extent of his obligation under the court's order. Respondent has repeatedly claimed that the effect of the order is to require him to pay $150 per month for Lisa's college tuition and fees plus $500 per month for other expenses, for a total monthly payment of $650. This is simply incorrect. As we have previously indicated, the plain language of the order makes clear that respondent's total obligation for Lisa's expenses is $500 per month, beginning in October 1985. He must also make a one-time payment of $443.81 to reimburse petitioner for sums she had advanced for Lisa's college tuition and book fees prior to that time. There is ample evidence in the record to substantiate these sums. Indeed, the evidence adduced by petitioner showed that effective November 1, 1985, Lisa's expenses will actually exceed the sums awarded by the trial court, even without tuition and fees.

In addition to the amount of the payments for Lisa's expenses, respondent challenges the trial court's finding that he remains liable for those payments. Specifically, respondent asserts that the court's order is infirm because: (1) he was precluded from fully presenting evidence bearing on the factors set forth in section 513 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 513), and (2) what evidence was adduced on those factors was not sufficiently detailed to support the court's judgment.

We believe that respondent's reliance on section 513 is misplaced. That provision deals, in relevant part, with court-awarded payments for the education and maintenance of the parties' children, whether of minor or majority age, after a marriage has been dissolved. It directs the court, in making such awards, to consider all relevant factors, including the financial resources of both parents, the standard of living a child would have enjoyed had the marriage not been dissolved, and the financial resources of the child. This case, however, does not involve an initial award of payments for educational expenses made by the court at the time of dissolution or in a post-decree motion (*cf. Greiman v. Friedman* (1980), 90 Ill. App. 3d 941, 414 N.E.2d 77), or even a request for modification of such an award. Nor is this a situa-

tion where the original dissolution decree reserved the question of educational expenses for future consideration. (*Cf. In re Marriage of Gardner* (1980), 85 Ill. App. 3d 1004, 407 N.E.2d 802; *In re Marriage of Pauley* (1982), 104 Ill. App. 3d 100, 423 N.E.2d 661). While respondent did file a motion for modification more than a year prior to the October 2 hearing, that motion sought only temporary suspension or abatement of respondent's support obligations on the grounds that he had been unable to find employment in early 1984. The exigency giving rise to respondent's motion had long since passed. Respondent was able to return to work and earned approximately $27,000 in 1984. Until May of 1985 he was able and willing to pay Lisa's tuition and fees and to give her $300 per month for food, spending money, utilities and transportation, plus additional, unspecified amounts for clothing and medical expenses. Respondent was employed full time as of the October 2 hearing, and no claim was made that his financial situation had declined substantially after his payments for Lisa's expenses had ceased.

What is involved here is simply a petition to enforce a settlement agreement which had previously been incorporated into the dissolution judgment of the court. Respondent had never before questioned the validity of that settlement agreement. Indeed, he had urged its approval by the court when petitioner had attempted to have it set aside as unconscionable. The agreement was unqualified. It did not, by its terms, condition respondent's obligation to pay on his financial ability (*cf. Larsen v. Larsen* (1984), 126 Ill. App. 3d 1072, 468 N.E.2d 165) on his right to participate in selection of the institution attended or the course of study pursued by Lisa (*cf. In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 1026, 402 N.E.2d 348, 350) or on the financial circumstances of Lisa or petitioner. We therefore believe that neither these factors, nor any others which might be relevant under section 513 (Ill. Rev. Stat. 1981, ch. 40, par. 513), can excuse respondent's duties under the agreement. To hold otherwise would convert every proceeding under section 502 (Ill. Rev. Stat. 1981, ch. 40, par. 502) into a *de novo* review of the settlement agreement, rendering that statute a nullity. Accordingly, we cannot agree that the trial court erred in refusing to hear evidence on the factors set forth in section 513 (Ill. Rev. Stat. 1981, ch. 40, par. 513). (See *Larsen v. Larsen* (1984), 126 Ill. App. 3d 1072, 1073, 468 N.E.2d 165, 167.) In view of this conclusion, the question of the sufficiency of the evidence bearing on those factors need not be reached.

■ Respondent argues that the trial court's finding that he wilfully violated the settlement agreement is also contrary to the law

and evidence. This contention is wholly without merit. Whether a party is guilty of contempt is a question of fact for the trial court, and a reviewing court will not disturb the finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 286-87, 469 N.E.2d 167, 176.) In this case, the record clearly shows that respondent failed to make any payments toward Lisa's educational expenses as required by the settlement agreement after May of 1985. Although he initially denied knowledge that Lisa planned to return to school for the fall 1985 term, he later admitted that Lisa had requested money for school as early as June of 1985 and stated that he had actually agreed to pay Lisa's tuition when the parties met at the courthouse in September 1985 in connection with the sale of the marital residence. Despite this agreement, the record shows that he had still failed to make any payments on Lisa's behalf as of the October 2 hearing. Moreover, respondent was never willing to agree to make payments for expenses other than tuition. To the contrary, he adamantly refused to make such payments after April of 1985. "No, I ain't gonna give her nothing," he testified.

█▌ █ Respondent's refusal was apparently motivated, in part, by ill will which developed between him and Lisa, but it is well settled that the obligation to contribute to educational expenses is not conditioned upon a continued good relationship between parent and child. (*In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 1029, 402 N.E.2d 348, 352.) Respondent also seeks to justify his conduct on the grounds that he did not believe that the settlement agreement was meant to cover more than two years of attendance at junior college (at the time of the hearing, Lisa had begun her third year of school) or to include various expenses incurred by Lisa while in school. This is no defense. The settlement agreement was incorporated into, and had the effect of, a judgment of the court. As a general rule, a court order is conclusive and must be obeyed, even if it is erroneous, until it is modified or set aside. (See *In re Adoption of Schumacher* (1983), 120 Ill. App. 3d 50, 54-55, 458 N.E.2d 94, 98.) For respondent to unilaterally decide that he would discontinue payments for Lisa was therefore completely improper. See *In re Marriage of Rosenbaum* (1980), 85 Ill. App. 3d 931, 933-34, 407 N.E.2d 711, 713.

█▌ Respondent's noncompliance with the provision of the dissolution judgment requiring him to pay Lisa's college expenses constitutes *prima facie* evidence of contempt. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 285, 469 N.E.2d 167, 175.) The burden therefore shifts to respondent to prove that "he neither has money now with

which he can pay, nor has disposed wrongfully of money or assets with which he might have paid." (103 Ill. 2d 266, 285, 469 N.E.2d 167, 175.) That burden can only be met through definite and explicit evidence. (*In re Marriage of Ramos* (1984), 126 Ill. App. 3d 391, 398, 466 N.E.2d 1016, 1022, *cert. denied* (1985), 471 U.S. 1017, 85 L. Ed. 2d 305, 105 S. Ct. 2023.) No such evidence has been adduced. Respondent admits that the information he furnished concerning his income, expenses, assets and liabilities consisted of "guesses," and he made no attempt to furnish more detailed or exact data. In his brief he asserts that he offered "to revise the rough forms [setting forth his finances, income and expenses] and submit corrected ones," but this is not so. The transcript reveals that his attorney offered only to file a more *legible* copy of respondent's financial statement, if the court so desired. The court declined respondent's offer, finding that the copy on file was "perfectly readable." The court's finding of contempt must stand.

■ We also refuse to disturb the trial court's finding that respondent must pay $950 of petitioner's attorney fees. The allowance of attorney fees rests largely with the discretion of the trial court. Respondent cites no authority which suggests that the trial court's discretion was abused here. When a party must go into court to vindicate his rights under a divorce decree, the party resorting to the judicial system is entitled to an award of attorney fees in a reasonable amount. (*Sidwell v. Sidwell* (1981), 102 Ill. App. 3d 56, 60, 429 N.E.2d 539, 542.) We believe that $950 was reasonable under the facts of this case.

Petitioner filed a motion, which we took with the case, to strike portions of respondent's brief. Our decision on the merits in favor of petitioner eliminates the need to rule on this motion. See *Department of Public Works & Buildings v. Jensen* (1973), 11 Ill. App. 3d 93, 99, 296 N.E.2d 52, 56.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.