*In re* MARRIAGE OF SALLY A. HOLDERRIETH, Petitioner-Appellee, and RICHARD C. HOLDERRIETH, Respondent-Appellant.

First District (4th Division)   No. 1—88—1142

Opinion filed March 23, 1989.—Rehearing denied April 27, 1989.

George E. Downs, of Palatine, for appellant.

Stephen K. Bell, Ltd., of Wheaton (Stephen K. Bell and Joseph H. King, Jr., of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

The circuit court of Cook County entered a judgment dissolving the marriage of petitioner, Sally Holderrieth, now known as Sally Nielsen, and respondent, Richard Holderrieth. Sally and Richard entered into a settlement agreement, which was incorporated into the judgment of dissolution. The agreement provided, *inter alia,* that Richard would pay the "college and professional education expenses of the children."

Subsequently, Sally and Richard's son, Brian, began attending the Denver Automotive and Diesel College, Inc. Richard refused to pay Brian's tuition and other expenses. Sally petitioned the trial court (1) to enforce the settlement agreement, and (2) to grant her the same post-judgment relief pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (Ill. Rev. Stat. 1987, ch. 40, par. 513).

Following a bench trial, the trial court entered an order in favor of Sally, based solely on section 513 of the Marriage Act. Richard appeals, contending that the trial court erred because the school attended by Brian falls within neither the terms of the settlement agreement nor section 513 of the Marriage Act.

We reverse the order of the trial court.

BACKGROUND

The trial court entered its judgment of dissolution on May 3, 1976. The judgment incorporated the settlement agreement of Sally and Richard. The pertinent provision from their agreement follows:

"L. That [Richard] shall pay for the college and professional education expenses of the children of the parties hereto, including, but not limited to, tuition, books, supplies, registration and other required fees, board, lodging assessments and charges, and round-trip transportation expenses between the college or

professional school and the home of the children if they are in attendance at an out-of-town college or professional school; [Richard's] obligation to pay such expenses is based on whether or not the children of the parties have a desire and aptitude for such a college or professional education, and [Richard's] ability to pay such expenses."

On November 6, 1987, Sally filed a "Petition For Rule To Show Cause." She alleged that Brian was attending the Denver Automotive and Diesel College and that Richard refused to pay Brian's expenses. She sought enforcement of paragraph L of the settlement agreement.

In his answer to Sally's petition, Richard alleged that he knew nothing about Brian attending the school. Richard further alleged that, at the time of their dissolution, he and Sally did not intend for him to pay Brian's expenses in attending a school such as the Denver Automotive and Diesel College.

The trial court held a hearing on Sally's petition on March 11, 1988. The record shows that at the outset of the hearing, Sally sought and received leave to file, *instanter*: (1) an amended petition seeking enforcement of the settlement agreement, and (2) a petition seeking the same post-judgment relief under section 513 of the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 513). Richard did not object to the amended petition to enforce and the section 513 petition. The trial court allowed Richard's answer to Sally's original petition to stand against her new petitions.

The record is contradictory at this point. As stated earlier, Sally filed a petition for post-judgment relief under section 513 of the Marriage Act. However, during closing argument, she based her claim exclusively on the settlement agreement. She plainly stated that section 513 does not apply to the instant case, because the settlement agreement provided for their children's educational expenses.

The contradictions continue. On March 31, 1988, the trial court entered an order in favor of Sally. Despite her concession on the applicability of section 513 of the Marriage Act, the trial court based its order solely on section 513 of the Marriage Act. The record shows that the trial court did not decide whether the Denver Automotive and Diesel College fell within the terms of the settlement agreement. The court did not even address the issue. Rather, the court simply stated:

"Even if this Court were to accept [Richard's] definitions of college and professional education to exclude trade school, [Richard] is still responsible for the payment of reasonable expenses relating [to] Brian's education."

The trial court based this conclusion on section 513 of the Act.

The court ordered Richard to pay Sally $7,250.13 in expenses which she had already paid, and thereafter, $600 per month "until Brian finishes his trade school education." Richard appeals.

OPINION

I

■ Richard first contends that the Denver Automotive and Diesel College is not a "college or professional school," as prescribed by the settlement agreement. It is quite settled that the normal rules pertaining to the construction of contracts apply to the interpretation of provisions in a dissolution judgment. A court should construe the settlement provisions within the dissolution judgment so as to give effect to the intention of the parties. The court must determine the parties' intent solely from the language of the instrument itself. *White v. White* (1978), 62 Ill. App. 3d 375, 378, 378 N.E.2d 1255, 1258; *Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 548, 286 N.E.2d 113, 114.

The parties' intent must be determined from the instrument as a whole and not from any one clause standing alone; meaning and intent must be given every part. No part should be rejected as surplusage unless absolutely necessary, since it is presumed that the parties inserted each provision deliberately and for a purpose. (*White,* 62 Ill. App. 3d at 378, 378 N.E.2d at 1258.) The court cannot place a construction on the instrument that is contrary to or different from the plain and obvious meaning of the language. *Brown v. Miller* (1977), 45 Ill. App. 3d 970, 972, 360 N.E.2d 585, 587.

If the instrument is incomplete or its language is ambiguous, extrinsic evidence may be introduced to explain the language. An instrument is ambiguous when the language used is reasonably susceptible to more than one meaning. However, language is not rendered ambiguous simply because the parties do not agree on its meaning. *White,* 62 Ill. App. 3d at 378-79, 378 N.E.2d at 1258.

■ In the case at bar, neither Sally nor Richard questions the completeness or validity of their settlement agreement. Indeed, each relies on the agreement in support of her or his position. Rather, Sally and Richard disagree on the meaning of the terms "college or professional education" and "college or professional school," found in paragraph L of the dissolution judgment. Richard contends that the Denver Automotive and Diesel College is not a college or professional school, but rather is a trade or vocational school. Therefore, the settlement agreement does not obligate him to pay Brian's expenses in attending the school.

We conclude that the term "college or professional," as used in paragraph L of the dissolution judgment, is sufficiently unambiguous. "While the word [college] has other meanings, *** in its most common use 'college' designates an institution of learning *** which offers instruction in the liberal arts and humanities and in scientific branches, but not in the technical arts or those studies preparatory to admission to the professions." (14 C.J.S. *Colleges & Universities* §1 (1939).) Other sources define the term "college" as follows:

"[2]d: [A]n independent institution of higher learning offering a course of general studies and [usually] preprofessional training leading to a bachelor's degree." (Webster's Third New International Dictionary 445 (1981).)

And:

"1.a. A school of higher learning that grants the bachelor's degree in liberal arts or science or both. *** c. A technical or professional school, often affiliated with a university, offering the bachelor's or master's degree." The American Heritage Dictionary 291 (2d college ed. 1982).

Similarly, the term "profession" has been defined as follows:

"4a: [A] calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service." (Webster's Third New International Dictionary 1811 (1981).)

And:

"1. An occupation or vocation requiring training in the liberal arts or the sciences and advanced study in a specialized field." The American Heritage Dictionary 989 (2d college ed. 1982).

In contrast, a "trade" is defined as "an occupation requiring manual or mechanical skill and training: a craft in which only skilled workers are employed" (Webster's Third New International Dictionary 2421 (1981)), and an "occupation, [especially] one requiring skilled labor; craft" (The American Heritage Dictionary 1284 (2d college ed. 1982)). Indeed, the United States Supreme Court has defined the term "trade" as follows:

"Wherever any occupation, employment, or business is carried on for the purpose of profit, or gain, or a livelihood, *not in the liberal arts or in the learned professions,* it is constantly called

a trade." (Emphasis added.) *Atlantic Cleaners & Dyers, Inc. v. United States* (1932), 286 U.S. 427, 436, 76 L. Ed. 1204, 1209, 52 S. Ct. 607, 610, quoting *The Schooner Nymph* (D. Me. 1834), 18 F. Cas. 506, 507 (No. 10,388).

Further, the terms "vocational school" or "trade school" are defined as follows:

"[V]ocational education *n*: training for a specific occupation in agriculture, trade, or industry through a combination of theoretical teaching and practical experience provided by many high schools in their commercial and technical divisions, and by special institutions of collegiate standing (as a college of agriculture, a school of engineering, or a technical institute)." (Webster's Third New International Dictionary 2561 (1981).)

(See also Webster's Third New International Dictionary 2422 (1981) (definition of "trade school").) And:

"[V]ocational school *n*. A school, [especially] one on a secondary level, that trains persons with special aptitudes for qualification in specific trades or occupations, as mechanics." The American Heritage Dictionary 1353 (2d college ed. 1982).

See also The American Heritage Dictionary 1284 (2d college ed. 1982) (definition of "trade school").

We need not further lengthen this opinion by contrasting additional definitions of a college or professional school with definitions of a trade or vocational school. (Compare, *e.g.,* 15A Am. Jur. 2d *Colleges & Universities* §1 (1976), with 87 C.J.S. *Trade* 207-08 (1954); Black's Law Dictionary 1338 (5th ed. 1979).) Clearly, these terms are not set in stone. A degree of flexibility and imprecision exists in the label "college or professional school or education" and also in the label "trade or vocational school or education." Indeed, educational institutions need such flexibility to adapt to changing circumstances through the years. See *Township of Princeton v. Institute for Advanced Study* (1960), 59 N.J. Super. 46, 53-54, 157 A.2d 136, 140.

Despite the flexibility and imprecision in those terms, however, it is also clear that the concept of a college or professional school or education is different and separate from that of a trade or vocational school or education. Based on the above-cited authorities and custom, we join the other jurisdictions that have considered the issue and hold that a college refers to undergraduate study in the liberal arts or sciences leading, usually after four years, to a bachelor's degree. *Brown v. Brown* (1984), 327 Pa. Super. 51, 55, 474 A.2d 1168, 1170 (and cases cited therein).

■ This record contains sufficient evidence to conclude that the

Denver Automotive and Diesel College is not what is customarily referred to as a college or professional school. In his testimony, Brian described the school as both a "community college" and a trade school. Brian testified that the school's program lasted 15 months. At the successful completion of the program, he would receive what is referred to as a two-year associate's degree. Brian testified also that the school taught only automobile and diesel mechanics. He received no instruction in English, English literature, social studies, math, or the fine arts. He could not take his associate's degree from the Denver school and transfer to a traditional college or university and begin his third year of study. The record also contains evidence that one can receive an education as an automobile or diesel mechanic in several ways, *e.g.*, trade schools, but also training programs through automobile manufacturers and dealers, and engine manufacturers.

In paragraph L of their settlement agreement, Sally and Richard chose to use the phrase "college or professional" school or education no less than four times. They could have used broader language (*e.g.*, "post-high school" education), or more specific language (*e.g.*, "college, professional, trade, or vocational" school or education), had they so intended. Sally and Richard, however, did neither, and we must interpret their agreement based on the plain language that they used. Based on this record, we hold that the Denver Automotive and Diesel College is not a college or professional school. The Denver school, therefore, falls outside of the settlement agreement of Sally and Richard. Consequently, we hold that the settlement agreement does not obligate Richard to pay Brian's expenses in attending the Denver school.

## II

As we stated earlier, the trial court based its order on section 513 of the Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 513), rather than on the settlement agreement. Section 513 provides in pertinent part:

"§513. Support for Non-minor Children and Educational Expenses. *** The Court also may make such provision for the education and maintenance of the child or children, whether of minor or majority age, out of the property and income of either or both of its parents as equity may require, whether application is made therefor before or after such child has, or children have, attained majority age. In making such awards, the court shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had

the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1987, ch. 40, par. 513.

The trial court made no findings as to whether the Denver Automotive and Diesel College was a college or professional school. The court simply concluded that even if the Denver school fell outside of the settlement agreement, then section 513 of the Marriage Act would obligate Richard to pay Brian's expenses in attending the school.

■ We conclude that the settlement agreement, rather than section 513 of the Marriage Act, controls the disposition of the case. It is well established that the parties in a dissolution proceeding may voluntarily settle their property interests. Ill. Rev. Stat. 1987, ch. 40, par. 502(a); *Guyton v. Guyton* (1959), 17 Ill. 2d 439, 444, 161 N.E.2d 832, 835; *James v. James* (1958), 14 Ill. 2d 295, 305, 152 N.E.2d 582, 587.

Further, Illinois courts look with favor upon agreements that determine the essential issues of property division, maintenance, and the custody, support, and education of the children. A court is unable to set aside such a settlement agreement, except as it pertains to children, unless there is clear and convincing evidence that the agreement was entered as the result of coercion, fraud or duress, or the agreement is contrary to public policy or morals (*Stutler v. Stutler* (1978), 61 Ill. App. 3d 201, 204, 377 N.E.2d 862, 864; *Beattie v. Beattie* (1977), 53 Ill. App. 3d 501, 505-06, 368 N.E.2d 178, 181-82; *Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 270, 314 N.E.2d 627, 630-31), or is unconscionable (Ill. Rev. Stat. 1987, ch. 40, par. 502(c)).

Generally, the obligation of a parent to support his or her minor child begins when the child is born and continues until the child attains majority. A parent cannot bargain away his or her obligation of child support. (*Blisset v. Blisset* (1986), 144 Ill. App. 3d 1088, 1091, 495 N.E.2d 608, 611, *aff'd* (1988), 123 Ill. 2d 161, 526 N.E.2d 125.) In cases of dissolution, however, section 513 of the Marriage Act authorizes a trial court to provide for the education of the child even after he reaches his majority, such provision coming out of the property and income of either parent, as equity may require. (Ill. Rev. Stat. 1987, ch. 40, par. 513.) Ordinarily, such orders are modifiable at all times, as changing circumstances warrant. *In re Marriage of Albiani* (1987), 159 Ill. App. 3d 519, 526-27, 512 N.E.2d 30, 35.

■ In the case at bar, however, Sally conceded during closing argument that the settlement agreement, rather than section 513, controlled the disposition of the case. We agree. Sally based her concession on *In re Marriage of Houston* (1986), 150 Ill. App. 3d 608, 501 N.E.2d 1015. The court in *Houston* noted that that case did not involve

an initial award for education expenses made by the trial court either at the time of the dissolution judgment or in a post-judgment motion; the case did not even involve a request to modify such an award. Additionally, the original dissolution judgment did not reserve the question of educational expenses for future consideration. (150 Ill. App. 3d at 613-14, 501 N.E.2d at 1019.) The *Houston* court concluded that what was involved was a petition to enforce a settlement agreement and, consequently, section 513 did not apply. The court reasoned:

> "To hold otherwise would convert every proceeding under section 502 (Ill. Rev. Stat. [1987], ch. 40, par. 502) into a *de novo* review of the settlement agreement, rendering that statute a nullity." 150 Ill. App. 3d at 614, 501 N.E.2d at 1019.

We agree with the reasoning and conclusion of the *Houston* court. As with the agreement in *Houston,* the language of paragraph L of the settlement agreement is valid and unqualified. Sally does not even seek to have the agreement modified; rather, she seeks its enforcement. In his answer to Sally's petition, Richard contended only that the Denver school fell outside of the settlement agreement. Richard is not attempting to evade a legal obligation. Sally conceded that section 513 did not apply, based on *Houston.*

Sally and Richard did not rely on the trial court for the adjustment of their marital rights so far as the education of their children was concerned. They did what they had a legal right to do—they adjusted those rights by mutual agreement. Like any other agreement based on full consideration, it is conclusive in the absence of unconscionability (Ill. Rev. Stat. 1987, ch. 40, par. 502(c)), fraud, coercion, duress, or a violation of public policy or morals (*Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 521, 386 N.E.2d 620, 621), or other considerations properly addressed by section 513 of the Marriage Act. This court reached the same conclusion in *Gaddis v. Gaddis* (1974), 20 Ill. App. 3d 267, 271-73, 314 N.E.2d 627, 631-33; see also *In re Marriage of Roth* (1981), 99 Ill. App. 3d 679, 684-85, 426 N.E.2d 246, 250-51.

For the foregoing reasons, the order of the circuit court of Cook County is reversed.

Reversed.

JOHNSON and McMORROW, JJ., concur.