*In re* MARRIAGE OF ELIZABETH S. SCHMIDT, n/k/a Elizabeth S. Miller, Petitioner-Appellant, and RICHARD B. SCHMIDT, JR., Respondent-Appellee.

Fourth District    No. 4—96—0941

Argued June 26, 1997.—Opinion filed September 11, 1997.—Rehearing denied October 14, 1997.

Steven C. Ward (argued), of Heckenkamp, Simhauser, Ward & Zerkle, of Springfield, for appellant.

Robert Barewin (argued), of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Elizabeth Miller, filed a petition to enforce a provision of the settlement agreement incorporated into the judgment for dissolution between herself and respondent, Richard Schmidt, Jr., which required respondent to pay one-half of their daughter's educational expenses incurred for college. The trial court entered an award for

much less than one-half of the college expenses for the private school in Ohio chosen by the daughter. Petitioner appeals, contending the trial court did not enforce the judgment as entered but modified it to include a requirement the college costs be reasonable and, in so doing, improperly based its decision on factors under section 513(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/513(b) (West 1996)). We affirm.

A judgment of dissolution was entered between the parties on December 30, 1986. The judgment included the following provision regarding educational expenses for college:

"IT IS FURTHER ADJUDGED that in the event that the minor children of the parties shall evidence the aptitude and desire for a college education, Respondent shall contribute one-half of such educational expenses."

On March 15, 1996, Elizabeth filed a petition to establish educational expenses pursuant to settlement agreement. On June 5, 1996, Richard filed his answer to the petition and admitted the parties' daughter, Emily Ann Schmidt, had been accepted to the University of Dayton and she planned to attend that school beginning August 28, 1996.

At the hearing on the petition, held June 5, 1996, Elizabeth testified Emily had been accepted to the University of Dayton (University) and wanted to go to school there and presented as an exhibit the letter of acceptance. She testified to the costs for attending the University for one year, which were broken down into counseling fee, orientation fee, tuition, university residence fee and meal service, with the total coming to slightly less than $17,345. Elizabeth also presented an exhibit consisting of an itemization of the costs provided to her by the University. The costs would be defrayed by a $1,500 scholarship if Emily maintained a "B" average and became involved in school activities.

Elizabeth further testified to approximate costs for books and other school supplies of between $200 and $350 for books and $100 for other supplies. Additional expenses included a college application fee ($20), registration fee ($200), charges for the American College Test and the Scholastic Aptitude Test ($488), and automobile insurance costs of $905 per year.

Elizabeth stated Emily applied for financial aid through FASFA (not explained in the record) and her application was denied. Elizabeth admitted the University is a private school, she and respondent had never agreed about splitting tuition at a particular school and the dissolution judgment did not refer to a specific school.

Emily was also accepted at Northern Illinois University,

Southern Illinois University at Edwardsville, and Southern Illinois University at Carbondale. Elizabeth did not know the exact costs at the state schools and did not know the difference in tuition between them and the University although she stated there was no significant difference between the tuition at the state schools and the University. Elizabeth did not inquire into the cost of any school until Emily had made her choice.

Emily testified she and her mother checked the costs of the state schools where she was accepted but she did not remember the costs any longer nor did she ever figure them out exactly. She did not apply for financial aid at the state schools because she did not decide to go to any of them. It was her choice to go to the University.

Emily chose the University because it is a small school with a good student-teacher ratio. She did not yet know what she would major in and would be a general arts major until the end of her sophomore year when she had to declare a major.

Richard testified he and Emily periodically discussed the fact she wanted to go to college but they did not discuss the name of a school. He never discussed with Elizabeth and Emily the costs of a private school as opposed to a state school. At one point, Emily did call him and tell him she needed $5,000 to attend the University. Elizabeth and Emily did not ask for his counsel, advice or input in deciding what college Emily would attend.

Richard testified, over objection, to his financial status. He testified his monthly expenses came close to exceeding his monthly income and he had no money saved. Richard stated he could not pay one-half of $17,000, the approximate cost of one year at the University. He had no objections to Emily attending one of the state schools to which she was accepted.

Richard testified he received information from his employer regarding all colleges in the state of Illinois and presented excerpts as an exhibit. From his exhibit he testified Southern Illinois University at Carbondale would cost $3,182 for tuition and fees and $3,256 for room and board for one year, while Northern Illinois University would cost $3,728 for tuition and fees and $3,300 for room and board, also for one year. Richard testified he talked to Emily about her college education but not to Elizabeth.

On rebuttal, Elizabeth testified Richard refused to talk about college when she tried to discuss it with him. Emily also testified on rebuttal Richard never talked to her about the cost of state schools.

The trial court took the matter under advisement and issued a written order on July 10, 1996. The trial court stated although the judgment of dissolution indicated Richard was responsible for one-

half of the college expenses of Emily, this did not give her *carte blanche* in her selection of a college. The court indicated a review of Richard's affidavit reflected he had neither the monthly income nor assets to pay college expenses where his share would be in excess of $9,000 per year. Additionally, the court noted Emily stated she would be a general arts major for the first two years of college and there was nothing in the record indicating either the University or its programs were significantly different from the state schools, particularly in the first two years, so as to warrant the higher costs. Therefore, the trial court found Richard to be responsible for $4,014 per year in educational expenses, which represented one-half of the tuition, fees, room and board for a state school and one-half of the supplies listed in Elizabeth's exhibit No. 2.

Elizabeth filed a motion to reconsider which was denied. In its order denying the motion, the trial court specifically found the agreement was to be considered a contract between the parties and the price term was missing. In such a circumstance, the trial court found a reasonable price is implied, citing *Ingrassia v. Ingrassia*, 156 Ill. App. 3d 483, 494, 509 N.E.2d 729, 737 (1987). The trial court found the price range for the state schools, together with Richard's occupation and income, led to a determination a reasonable price was lower than that requested by Elizabeth.

On appeal, Elizabeth first contends the settlement agreement, as embodied in the judgment of dissolution, was unambiguous and any result making Richard responsible for less than one-half of Emily's college expenses is a modification of the agreement. A child support obligation, specifically one for college expenses, is not modifiable without a petition for modification first being filed. *In re Marriage of Sawyer*, 264 Ill. App. 3d 839, 848, 637 N.E.2d 559, 565 (1994). Elizabeth argues Richard did not file a petition to modify and, therefore, the trial court could not change Richard's obligation for one-half of Emily's college expenses. The trial court, however, did not modify Richard's obligation to pay one-half of Emily's college expenses.

■ The judgment of dissolution indicates it was approved as to form and content by both Elizabeth and Richard and the provision for college expenses is referred to by both parties as an agreed settlement incorporated into the judgment. This was an agreement between the parties and not a judicial determination of the parties' rights, so we are dealing with a contract between the parties. *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 728-29, 589 N.E.2d 1074, 1077 (1992). The construction of the agreement is governed by principles of contract law. *Elliott*, 226 Ill. App. 3d at 728-29, 589 N.E.2d at 1077.

It is not necessary for a contract to specify all details to be enforceable but it must provide enough information so the details can be determined from the contract. *Kane v. McDermott*, 191 Ill. App. 3d 212, 217, 547 N.E.2d 708, 712 (1989). The agreement at issue here stated:

"IT IS FURTHER ADJUDGED that in the event that the minor children of the parties shall evidence the aptitude and desire for a college education, [Richard] shall contribute one-half of such educational expenses."

Elizabeth argues since the agreement between the parties provided Richard *shall* contribute one-half of Emily's educational expenses subject only to her aptitude and desire for higher education, the agreement is unambiguous and must be enforced as written, requiring Richard to pay one-half of Emily's college expenses, whatever amount that might be. She contrasts the language here with that found in *In re Marriage of Oldham*, 222 Ill. App. 3d 744, 745-46, 584 N.E.2d 385, 387 (1991), where the father's obligation to pay for college expenses was conditioned on the father being " 'financially able so to do' " as well as the " 'interest' " and " 'scholastic aptitude' " of the child and, finally, on the expenses being "necessary and reasonable." She notes Richard could have included language conditioning his obligation on reasonableness and his ability to pay but did not do so and Elizabeth argues she gave up any claim to maintenance or on his property when she signed the agreement and she cannot now adjust those areas as he is trying to do. An obligation to pay college expenses is specifically enforceable due to the rights the ex-wife gave up in the settlement agreement. See *Gaddis v. Gaddis*, 20 Ill. App. 3d 267, 271-73, 314 N.E.2d 627, 631-32 (1974).

Richard does not contend his obligation to pay college expenses for Emily is not specifically enforceable nor does he quibble with using contract law to govern the agreement. He argues the agreement does not set forth a specific price or even a method by which a specific price can be determined. It only establishes the proportion of the cost that each party must bear. In Illinois, when a contract is silent as to price, a reasonable price will be implied. *Victory Memorial Hospital v. Rice*, 143 Ill. App. 3d 621, 623, 493 N.E.2d 117, 119 (1986).

*Victory Memorial* dealt with a service contract in which a patient agreed to pay the hospital's regular charges for services rendered. When a dispute arose, the hospital argued the agreement indicated a definite price, the regular price charged by the hospital. However, the court held on appeal the term was not definite and, when a contract is silent as to a price term, it will be implied a reasonable price was intended. *Victory Memorial*, 143 Ill. App. 3d at 623-24, 493 N.E.2d at 119.

The opinion in *Victory Memorial* was cited as controlling in the case of *Ingrassia*, when the court was asked to interpret an almost identical provision requiring the father to pay the entire educational expenses for his daughter conditioned only upon her " 'desire and aptitude for a college education.' " *Ingrassia*, 156 Ill. App. 3d at 494, 509 N.E.2d at 737.

In *Ingrassia*, the mother filed an emergency motion for college expenses after enrolling her daughter in a private college without notice to the father. *Ingrassia*, 156 Ill. App. 3d at 493, 509 N.E.2d at 736-37. She argued the agreement required the father to pay the costs of their daughter's education no matter how much it cost. The question for the courts was how much the father was obligated to pay under the agreement. Both the trial and appellate courts agreed the agreement was silent as to how expensive a college education the father was required to provide. The courts stated the term missing was a price term and under the decision in *Victory Memorial* a reasonable price was implied. *Ingrassia*, 156 Ill. App. 3d at 494, 509 N.E.2d at 737. The trial court considered detailed evidence with respect to the cost of attending the college chosen by the daughter and found it to be reasonable. On appeal, the trial court's finding of reasonableness was affirmed. *Ingrassia*, 156 Ill. App. 3d at 497, 509 N.E.2d at 739.

Elizabeth argues the *Ingrassia* case differs from this case as it arose from a petition to modify; however, a careful review of the opinion indicates the college expense issue arose on the mother's motion to enforce the provision requiring the father to pay the expenses (*Ingrassia*, 156 Ill. App. 3d at 493, 509 N.E.2d at 736-37). Nothing in the *Ingrassia* opinion suggests the father filed a counterpetition requesting modification of his obligation to pay college expenses.

Additional support for finding a reasonable price is implied in an agreement between two divorcing parents, *i.e.*, where one is required to pay for an expense of the children, is found in *In re Marriage of Roth*, 99 Ill. App. 3d 679, 426 N.E.2d 246 (1981). *Roth* dealt not with college expenses but with an agreement whereby the father would pay for a bar mitzvah or confirmation celebration and party for each of the three children of the parties. The agreement set no limit on the cost of such a party. The ex-wife argued the agreement's terms were unambiguous and set no limit. The father argued a condition of reasonableness was implied. On appeal, the court agreed reasonableness was implicit, but found the father failed to show the party for his son was unreasonably expensive for a person with the father's income and standard of living. *Roth*, 99 Ill. App. 3d at 684, 426 N.E.2d at 250.

We find *Ingrassia* to be on point. Richard is not contesting his obligation to pay one-half of the college expenses for Emily, only the reasonableness of the expenses proposed by Elizabeth. Although the agreement itself could have used the term "reasonable," as the agreement in *Oldham* did, we find it is an implied term under contract law where a contract is silent as to price or another, more specific method of determining price.

The trial court did not modify the agreement without a motion to do so on file. Instead, it implied a reasonable price term in interpreting the contract in order to enforce it.

Elizabeth next argues the trial court erred in resorting to factors such as Richard's financial resources and the comparative costs of the University and the state colleges in Illinois in determining a reasonable price for college expenses where the obligation to pay those expenses has been provided for in a settlement agreement.

■ Section 513(a)(2) of the Act provides, upon application, the trial court may make awards from the property and income of either or both parents for the educational expenses of their children. 750 ILCS 5/513(a)(2) (West 1996). In making such awards the Act provides the court shall consider the financial resources of both parents, the standard of living the child would have enjoyed if the marriage had not been dissolved, the financial resources of the child and other relevant factors. 750 ILCS 5/513(b) (West 1996). Other relevant factors have been held to include the cost of the school, the programs offered at the school, the child's scholastic aptitude, how the school meets the child's goals, and the benefits the child will receive from attending the school. *In re Marriage of Spear*, 244 Ill. App. 3d 626, 630, 613 N.E.2d 358, 360-61 (1993). Another factor that may be considered is whether a divorced parent needs to pay for a private school education when adequate public schools are available. *In re Support of Pearson*, 111 Ill. 2d 545, 551-52, 490 N.E.2d 1274, 1277 (1986).

■ Elizabeth argues the parties have not requested the trial court to determine their parental responsibilities for a child's educational expenses under section 513(a)(2) of the Act but they have already agreed they are responsible for Emily's college expenses. Therefore, the factors used to make determinations under section 513(b) are inapplicable. Elizabeth relies on the cases of *In re Marriage of Houston*, 150 Ill. App. 3d 608, 501 N.E.2d 1015 (1986), and *In re Marriage of Holderrieth*, 181 Ill. App. 3d 199, 536 N.E.2d 946 (1989), to support her argument. Although both cases contain language discussing the fact a settlement agreement controls the rights and obligations of the parties over section 513(b) factors, neither case dealt with the issue of a reasonable price for college costs and neither case supports Elizabeth's position in this case.

In *Houston*, the mother filed a petition for a rule to show cause why the father should not be held in contempt for failure to comply with the settlement agreement that required the father to pay college expenses for the daughter of the parties " 'if she attends college.' " *Houston*, 150 Ill. App. 3d at 610, 501 N.E.2d at 1016-17. The court noted the mother sought enforcement of the settlement agreement. *Houston*, 150 Ill. App. 3d at 614, 501 N.E.2d at 1019. The father simply stopped paying for college expenses when he was unemployed and then also argued he should not have to pay for any more than two years at a junior college. He wanted to relieve himself of his obligation to pay college expenses altogether. The court in *Houston* found the agreement to pay college expenses was unqualified and the father's obligation to pay college expenses was not qualified by his financial ability or his right to participate in the selection of college attended or course of study by his daughter. *Houston*, 150 Ill. App. 3d at 614, 501 N.E.2d at 1019. The court stated neither these factors nor any others under section 513(b) of the Act would excuse his duties under the settlement agreement.

In *Holderrieth* the father was obligated to pay college or professional school expenses based on the desire and aptitude of the children and his ability to pay such expenses. *Holderrieth*, 181 Ill. App. 3d at 200-01, 536 N.E.2d at 948. The mother again filed a petition for rule to show cause because the father was refusing to pay education expenses for their son. She sought enforcement of the settlement agreement. *Holderrieth*, 181 Ill. App. 3d at 201, 536 N.E.2d at 948. The mother then was permitted to file an amended petition seeking relief under section 513 of the Act. The issue involved the son's choice of school. The son had chosen a trade school and, as the agreement specifically stated a college or professional school, the father claimed he had no duty to pay for his son's educational expenses at a trade school. The trial court based its decision on section 513 and required the father to pay the trade school expenses for the son. *Holderrieth*, 181 Ill. App. 3d at 201-02, 536 N.E.2d at 948. On appeal the court concluded the settlement agreement controlled over the provisions of section 513 (*Holderrieth*, 181 Ill. App. 3d at 206, 536 N.E.2d at 951) and found the definition of college or professional school as used in the settlement agreement did not include a trade school (*Holderrieth*, 181 Ill. App. 3d at 204-05, 536 N.E.2d at 950-51). Therefore, the father was found to have no obligation under the settlement agreement to pay for a trade school education. *Holderrieth*, 181 Ill. App. 3d at 205, 536 N.E.2d at 951.

Richard is not seeking to use the section 513 factors to avoid paying for one-half of Emily's college education. He is only asking the

trial court to interpret the contract as requiring a reasonable price for that education. He then seeks a determination of what is reasonable under the circumstances of this case.

In order to make such an interpretation, the trial court would have to use the factors found under section 513(b) of the Act. Both the trial court and Richard suggest section 513(b) factors were not considered but it is clear they were. We find nothing wrong with their use here. The trial court was not readjusting the parties' agreed obligations to pay Emily's college expenses but simply interpreting the contract by determining a reasonable price.

The standard of living the child would have enjoyed had the marriage not been dissolved and the financial resources of both parents are factors specifically set forth in section 513(b) of the Act. 750 ILCS 5/513(b) (West 1996). There is no evidence it was the intent of the parties when they entered into the agreement for college expenses that Emily could attend *any* college, regardless of cost. This agreement took place 10 years before their child was ready for college. If the parties had not been divorced, they likely would have discussed the best college situation for Emily and taken into consideration their income, Emily's interests and aptitudes, and the costs of the various schools Emily was interested in attending. One of the spouses would not have simply gone out with Emily and chosen a school without input from the other parent other than asking him to write a tuition check. The only way to determine a reasonable price would be to use the same factors two married parents would use.

■ Elizabeth argues the trial court should not be allowed to compare the price of state schools with that of a private school to determine reasonableness because a private school would always be more expensive than a state school. However, as noted by the trial court, another factor to be considered is whether there are special programs or attributes of a school that would make the additional costs of a private school more reasonable under the circumstances. See *Pearson*, 111 Ill. 2d at 551-52, 490 N.E.2d at 1277; *Spear*, 244 Ill. App. 3d at 630, 613 N.E.2d at 360-61. There was scant evidence of that here.

Elizabeth argues the burden of proof is on the party seeking to determine a price is unreasonable as the complaining party in both *Ingrassia* and *Roth* was required to do. See *Ingrassia*, 156 Ill. App. 3d at 494, 509 N.E.2d at 737; *Roth*, 99 Ill. App. 3d at 684, 426 N.E.2d at 250. She contends Richard did not show the cost of the University was unreasonable. However, he did not need to present his own evidence in order to meet his burden of proof when Emily's testimony itself did not provide meaningful reasons for her choice of the

University over the state schools. He only needed to show the costs of the state schools and his finances. The trial court then was able to draw the conclusion there was no advantage shown to make Richard pay more than the state school costs, particularly in view of his financial situation.

We find the trial court did not err in using section 513(b) factors to determine a reasonable price for college expenses. Elizabeth presented no evidence indicating why it was necessary or more appropriate for Emily to choose the University over state schools where she was also accepted. Richard's evidence of the lower costs at those schools, coupled with the evidence of his financial means, combined to make the higher costs of the university unreasonable.

Finally, Elizabeth argued at the time she filed her motion to reconsider the trial court's findings that Richard should be estopped from complaining of Emily's choice of schools because of his acquiescence in allowing her to enroll at the University. She argues Richard's conduct and words amount to either promissory or equitable estoppel.

■ The elements of promissory estoppel are (1) an unambiguous promise; (2) reliance on such promise by the promisee; (3) the promisor expects and foresees such reliance; and (4) the promisee relies on the promise to her injury. *Cullen Distributing, Inc. v. Petty*, 164 Ill. App. 3d 313, 318, 517 N.E.2d 733, 737 (1987). Elizabeth argues the unambiguous promise made by Richard was his agreement to pay one-half of Emily's college education expenses. The reliance was the fact the agreement provided a portion of the consideration for the settlement agreement and her waiver of maintenance as well as all her rights in any of Richard's property. Elizabeth asserts Richard expected and foresaw her reliance on his promise when he signed the agreement, approving it as to form and content. Her injury, she argues, occurred when she paid all of Emily's expenses to the date of the court hearing and her injury will increase with the receipt of the initial statement for payment from the University, which Elizabeth expected in July 1996.

■ This argument is flawed because Richard has not broken his promise to pay one-half of Emily's college expenses. This case involved a contract without a price term, which required the determination of a reasonable price. This case does not involve the breach of an unambiguous promise nor did the evidence support such a finding.

The evidence indicated Richard was willing to pay one-half of reasonable college expenses. There was no indication in the record Richard's promise to pay one-half of the college expenses was even

part of the reason Elizabeth waived maintenance and gave up any rights in Richard's property. Finally, Elizabeth obligated herself to pay for tuition and room and board at the University without first consulting Richard as to the reasonableness of the costs.

■ Next Elizabeth argues Richard should be equitably estopped from complaining of Emily's choice of colleges. The elements of equitable estoppel are (1) words or conduct amounting to misrepresentation or concealment of material facts; (2) knowledge on the part of the person against whom the estoppel is asserted that the representations were untrue; (3) the truth of the representations must be unknown to the party asserting the estoppel; (4) the party making the representations must reasonably expect they will be acted upon by the party asserting estoppel or the public generally; (5) the party asserting the estoppel must have relied upon the conduct or representations in good faith; and (6) the party asserting the estoppel must have so acted because of such representations or conduct that she would be prejudiced if the first party is permitted to deny the truth thereof. *Vaughn v. Speaker*, 126 Ill. 2d 150, 162-63, 533 N.E.2d 885, 890 (1988).

■ Elizabeth argues Richard's conduct in failing to file a petition to modify amounted to concealment of the material fact he would attempt to modify the settlement agreement at the time of her enforcement proceeding. She argues his signature on the settlement agreement coupled with his later successful modification of the dissolution order in this case indicated his original approval of the agreement was a misrepresentation. She had no way of knowing his representations were untrue and she reasonably relied on them by both signing the agreement and then enrolling Emily in the University based upon Richard's promise to pay one-half of Emily's expenses there. Elizabeth contends Richard must have intended her to rely on his representations and she has been prejudiced by her reliance on them. Elizabeth argues Richard sat by and did nothing even though he knew Emily had decided to enroll at the University. She contends he acquiesced in Emily's choice and should now be estopped from challenging the cost for her to attend the college of her choice.

The evidence is not so clear-cut, however. The only mention of the University in the testimony was that Emily once called Richard and told him she needed $5,000 to attend the University. The testimony indicated the parties never sat down together to discuss Emily's choice of college, the expenses involved or the available funds to pay for her choice. Perhaps Emily made her decision based on her and Elizabeth's belief Richard was responsible for one-half of whatever expense she chose to incur. That belief was not induced by any misrepresentations by Richard nor does the evidence show he acquiesced in Emily's choice of college.

There is no evidence Richard was aware Emily had already enrolled at the University. There is, however, evidence Richard obtained information regarding the costs of state schools to which Richard knew Emily had been accepted. This was something Elizabeth and Emily did not do. Richard testified he was not consulted in any way about Emily's specific college plans, although he was aware she had a general desire to attend college and he was proud of her academic ability. Elizabeth testified, however, Richard refused to discuss college plans. The discrepancy here was a credibility issue, which is within the province of the trial court to resolve. *People v. Sanchez*, 131 Ill. 2d 417, 426, 546 N.E.2d 574, 579 (1989).

Equitable estoppel was not proved by Richard's failure to file a petition to modify, which he did not need to do, nor was there evidence he acquiesced in Emily's decision to attend the University.

The judgment of the trial court is affirmed.

Affirmed.

GARMAN and GREEN, JJ., concur.