# Illinois Official Reports

## Appellate Court

---

### *Buchanan v. Legan*, 2017 IL App (3d) 170037

---

| | |
|---|---|
| Appellate Court Caption | HANNAH E. BUCHANAN, Petitioner-Appellant, v. MICHAEL LEGAN, SUSAN E. BUCHANAN, n/k/a Susan E. Blair, and JAMES E. BUCHANAN, Respondents (Michael Legan, Respondent-Appellee). |
| District & No. | Third District<br>Docket No. 3-17-0037 |
| Filed | December 7, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 16-F-40; the Hon. Lisa Y. Wilson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Brian J. Seckler and Robert R. Parker, of Parker & Parker, of Peoria, for appellant.<br><br>Susan H. Butler, of Butler, Giraudo & Meister, PC, of Morton, for appellee. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justices Carter and Lytton concurred in the judgment and opinion. |

## OPINION

¶ 1    On March 25, 1997, Susan E. Buchanan gave birth to a daughter, Hannah E. Buchanan (Hannah), during the course of a marriage with James E. Buchanan. Two years later, the couple's marriage was dissolved and a joint parenting agreement resulted in joint custody for the children born during the course of this marriage, including Hannah. More than a decade later, Susan Buchanan filed two separate parentage actions in the circuit court. The second 2011 petition, relevant to this appeal, attempted to simultaneously disestablish the existing parent-child relationship between Hannah and James Buchanan in order to create a new parent-child relationship with Hannah's purported biological father, Michael Legan. The prayer for relief in the second 2011 petition included a request for the trial court to order DNA testing, enter a finding that Michael Legan was Hannah's "natural" father, establish a visitation schedule and impose child support obligations on Michael Legan as Hannah's second and only other legal parent.

¶ 2    Court-appointed counsel for Hannah filed a motion to dismiss the second 2011 petition, filed by Susan Buchanan on Hannah's behalf. The motion to dismiss alleged the shortened statute of limitations barred the relief requested in the second 2011 petition because all parties had known for more than two years that someone other than James Buchanan was Hannah's biological father. After a hearing, the court entered a written order granting Hannah's motion to dismiss the second 2011 petition.

¶ 3    Four years later, Hannah filed her own amended 2016 petition to determine the existence of a father-child relationship with Michael Legan shortly after attaining age 18. The amended 2016 petition did not contest the existing parental rights of James Buchanan. The trial court found that *res judicata* barred the relief requested in the subsequently amended 2016 petition as a matter of law, due to the resolution of the prior proceeding in 2012 that was filed in Hannah's name. The trial court dismissed the amended 2016 petition over Hannah's objection. Hannah Buchanan appeals.

¶ 4                                            FACTS

¶ 5    In 1999, Susan Buchanan (Susan),[1] filed a petition for dissolution of marriage from James Buchanan (respondent-Buchanan), in Peoria County case No. 99-D-277. The petition alleged, *inter alia*, that a child, Hannah, was born March 25, 1997, to Susan and respondent-Buchanan during the course of their marriage. On May 19, 1999, the trial court entered a judgment of dissolution and joint parenting agreement that dissolved the marriage and adjudicated respondent-Buchanan as Hannah's joint custodial parent.

¶ 6                                 I. First 2011 Petition

¶ 7    On March 7, 2011, Susan filed a "Petition to Determine the Existence of the Father and Child Relationship and for Determination of Child Related Issues" in Peoria County case No. 11-F-153 (first 2011 petition). The first 2011 petition sought to determine the existence of the father-child relationship between Hannah and Michael Legan (respondent-Legan), claiming that respondent-Legan was Hannah's natural father. On June 9, 2011, Susan and

---

[1]Susan Buchanan is now known as Susan Blair.

respondent-Legan stipulated and agreed to dismiss the first 2011 petition with prejudice. The stipulated dismissal order contained language stating the stipulated dismissal was "with prejudice as to that cause of action, but not with prejudice as to other parties who may request a determination as to same."

¶ 8                                    II. Second 2011 Petition

¶ 9      On May 6, 2011, Susan filed a "Petition to Determine the Existence of a Father-Child Relationship, the Non-Existence of a Father-Child Relationship, and Child-Related Issues" (second 2011 petition) in Peoria County case No. 11-F-369. This second 2011 petition, filed by Susan on behalf of Hannah, differed from the first 2011 petition by naming Michael Legan and James Buchanan as respondents. The second 2011 petition attempted to disestablish the existing father-child relationship between Hannah and respondent-Buchanan resulting in Susan becoming Hannah's sole custodial parent. The prayer for relief in the second 2011 petition also requested the trial court to order DNA testing, enter a finding that respondent-Legan was Hannah's "natural" father, impose child support obligations on respondent-Legan, and establish a visitation schedule between Hannah and respondent-Legan.

¶ 10     The trial court appointed Jeffrey Dunn as guardian *ad litem*. A report filed by Dunn indicated that Dunn interviewed Hannah and respondent-Buchanan. Dunn advised the trial court, based on his investigation, that he believed Susan initiated the second 2011 petition, in her daughter's name, solely for Susan's financial gain and without any regard for Hannah's best interests. Dunn concluded this approach was not in Hannah's best interests because Hannah felt strongly that respondent-Buchanan should continue his status as her legal parent.

¶ 11     The trial court also appointed Angela Madison, an attorney, to act as Hannah's child representative. Madison filed a motion to dismiss the second 2011 petition that designated Hannah as the petitioner, rather than Susan. Hannah's motion to dismiss included the following statements:

> "5. An action to declare the non-existence of a parent-child relationship is barred, under 750 ILCS 45/8 [(West 2010)], if brought later than 2 years after the Petitioner obtains knowledge of relevant facts and shall not extend beyond the minor's eighteenth birthday.
>
> ***
>
> 7. An action to determine the existence of a father-child relationship can be brought by HANNAH, herself, pursuant to 750 ILCS 45/8 [(West 2010)] during the two year period of time after she reaches her majority. Thus, in the event that HANNAH wants to pursue a determination of the existence of a father-child relationship between she [*sic*] and Michael Legan, after reaching her adulthood and is possibly less influenced by her mother, then HANNAH will still have the right to do so."
>
> * * *
>
> WHEREFORE, this child representative for the minor, HANNAH BUCHANAN, prays this Court enter an order dismissing the Petitioner's Petition to Determine the Exiistence [*sic*] of a Father-Child Relationship, the Non-Existence of a Father-Child Relationship, and Child Related Issues."

¶ 12    On May 21, 2012, respondent-Legan filed a "Response to Brief Regarding Representation of the Minor Child by Natural Guardian, Guardian Ad Litem and Child Representative." The following language appears in the conclusion paragraph of respondent-Legan's response: "Due to the conflict of interest between the minor and natural guardian portrayed by the GAL, Child Representative, and Respondent, Michael Legan, the case should be dismissed, with the minor afforded the opportunity to litigate this issue after she turns eighteen years of age."

¶ 13    Susan filed a motion to strike Hannah's motion to dismiss. This motion to strike is not included in the record on appeal. On July 25, 2012, the trial court conducted a hearing on Susan's motion to strike and Hannah's motion to dismiss. The court struggled with whether Hannah's motion to dismiss should be treated as a voluntary dismissal or whether Hannah's request would result in an involuntary ending to the pending petition. After much debate, when announcing the court's ruling to the parties, the trial judge stated, *inter alia*, that: "My chief concern is finality. *** When we are talking about a child's future, don't mess around with it, court, get it done, okay, move on."

¶ 14    The trial court's written order granted Hannah's motion to dismiss and included the following language:

> "After hearing arguments and for the reasons stated on the record, the court orders
>
> (1) Motion To Dismiss filed by Child Representative is granted
>
> (2) Mother's Motion to Strike Motion to Dismiss is denied."

No party appealed the trial court's 2012 order or requested a timely modification of the language included in the court order.

¶ 15                              III. Hannah's 2016 Petition

¶ 16    Three years later, on June 29, 2016, Hannah, then age 18, filed an "Amended Petition to Determine the Existence of the Father and Child Relationship" (amended 2016 petition) in Peoria County case No. 16-F-40, naming both custodial parents and Michael Legan as respondents. The amended 2016 petition sought only to determine the existence of a father-child relationship between Hannah and respondent-Legan without addressing or questioning the existing parental status of respondent-Buchanan arising from the final judgment of dissolution.

¶ 17    On July 28, 2016, respondent-Legan filed a section 2-619 (735 ILCS 5/2-619 (West 2016)) motion to dismiss the amended 2016 petition on two grounds. Respondent-Legan claimed the ruling granting Hannah's motion to dismiss the second 2011 petition constituted a dismissal with prejudice and constituted a final resolution of the causes of action set forth in the second 2011 petition. On this basis, respondent-Legan argued *res judicata* precluded Hannah from attempting to relitigate any issues that were determined or could have been determined in that prior proceeding. In addition, respondent-Legan claimed another affirmative matter, the applicable statute of limitations, barred the amended 2016 petition to establish a father-child relationship.

¶ 18    The trial court conducted a hearing on respondent-Legan's section 2-619 motion to dismiss the amended 2016 petition on November 1, 2016. In a written order dated January 11, 2017, the trial court granted respondent-Legan's section 2-619 motion to dismiss and found Hannah's 2016 attempt to establish a father-child relationship was now barred by

the doctrine of *res judicata* resulting from the dismissal of the second 2011 petition with prejudice. The trial court did not reach the merits of respondent-Legan's other contention regarding the limitations period.

¶ 19     Hannah filed a timely notice of appeal on January 12, 2017.

¶ 20                              ANALYSIS

¶ 21     On appeal, Hannah contends the dismissal of the second 2011 petition resulted in a voluntary dismissal in 2012. Since a voluntary dismissal does not result in a final determination of the issues, Hannah argues the trial court erroneously applied the doctrine of *res judicata* before dismissing her amended 2016 petition. Alternatively, Hannah contends respondent-Legan made a judicial admission in the prior proceeding that requires a denial of his section 2-619 motion to dismiss the amended 2016 petition. We first address whether *res judicata* applies based on the procedural history documented in the record on appeal.

¶ 22     The doctrine of *res judicata* serves to bar actions in which (1) a final judgment on the merits has been rendered by a court of competent jurisdiction, (2) an identity of the cause of action exists, (3) and there is an identity of the parties or their privies in both actions. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). *Res judicata* prevents the relitigation of issues that could have been decided in the first action along with those issues that were actually decided. *Id.* The trial court's application of *res judicata* involves a question of law. Thus, our standard of review is *de novo. Curtis v. Lofy*, 394 Ill. App. 3d 170, 177 (2009).

¶ 23     With regard to the application of *res judicata*, the parties only dispute whether the trial court rendered a final judgment on the merits by granting Hannah's motion to dismiss the second 2011 petition. Hannah asserts the generic motion to dismiss the second 2011 petition filed by her court-appointed counsel constitutes a voluntary dismissal of the second 2011 petition filed by her mother on Hannah's behalf. Based on the same record, respondent-Legan contends the dismissal of the second 2011 petition should be treated as an involuntary dismissal with prejudice. The trial court agreed with respondent-Legan's view that the dismissal of the second 2011 petition was with prejudice.

¶ 24     Hannah did not caption her pleading as a motion to strike the second 2011 petition filed by one parent unilaterally seeking to terminate the other joint parent's rights established by court order in the prior dissolution proceeding. Instead, Hannah filed a motion to dismiss the second 2011 petition filed by one parent on her behalf. Hannah's inartful motion to dismiss did not designate whether she was seeking a voluntary dismissal under section 2-1009 or was seeking an involuntary dismissal under section 2-619. 735 ILCS 5/2-1009, 2-619 (West 2010). Thus, this court must now determine whether the resulting undisputed dismissal in the trial court was without prejudice as Hannah contends on appeal.

¶ 25     Such confusion can be easily avoided by meticulous procedural practice when drafting potentially outcome-dispositive pleadings. See *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 484 (1994). When a motion to dismiss is silent, as in the case at bar, the nature of the motion must be gleaned by closely examining the grounds, requests, and the treatment of the motion by the parties and the trial court. *Id.*

¶ 26     Based on our careful review, we note first and foremost, Hannah desired to prevent an untimely attempt to interfere with an existing and long-standing father-child relationship that

began at birth. Hannah's motion clearly asserted the request to disestablish Hannah's relationship with respondent-Buchanan was time-barred based on certain facts and could never be refiled for this reason. In the trial court, the parties did not take issue with Hannah's factual allegation that more than two years had gone by since the parties became aware that Hannah might *not* be the biological child of respondent-Buchanan. These grounds are consistent with a section 2-619(a)(5) motion for dismissal of the second 2011 petition with prejudice. 735 ILCS 5/2-619(a)(5) (West 2010).

¶ 27    However, our careful review of the record also reveals the second 2011 petition sought to simultaneously repeal and then immediately replace an existing parent-child relationship with another parent as part of the same proceeding initiated by the second 2011 petition.

¶ 28    Significantly, the prayer for relief in the second 2011 petition assumed that Susan would become Hannah's sole custodial parent once the court disestablished respondent-Buchanan's parental status. Based on this assumption, the prayer for relief requested the trial court to establish respondent-Legan as Hannah's second parent and enter an order scheduling visitation and ordering respondent-Legan to pay child support based on his income.

¶ 29    Neither Hannah nor respondent-Buchanan shared Susan's interest in disestablishing respondent-Buchanan's parental rights. The grounds for dismissal set forth in Hannah's motion to dismiss raised an affirmative matter that would once and for all terminate the repetitious litigation seeking to designate Susan as Hannah's sole custodial parent and naming another person, other than respondent-Buchanan, as Hannah's only other joint parent.

¶ 30    The nature of Hannah's nondesignated motion to dismiss the second 2011 petition caused the trial court to carefully reflect on the true nature of the motion. The court commented that Hannah had the ability to request a voluntary dismissal. Yet, when announcing the court's ruling after much debate, the trial court recognized, "My chief concern is finality. *** When we are talking about a child's future, don't mess around with it, court, get it done, okay, move on." The trial court's written order does not include any language indicating the second 2011 petition was dismissed *without* prejudice. This order was not challenged by any party or subject to a request for reconsideration, modification, or clarification. Such is the unique record submitted for our review.

¶ 31    The case law provides that when a dismissal order fails to specify that the dismissal is without prejudice, the order should be viewed as a final adjudication on the merits. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 25; see Ill. S. Ct. R. 273. In the absence of clarity arising from the record submitted for our review, this court must follow the path established by existing case law and Rule 273. Based on the unique procedural record in this case, we conclude that the trial court's 2012 order granting Hannah's motion to dismiss the second 2011 petition, filed on her behalf, resulted in a dismissal with prejudice.

¶ 32    On this basis, we conclude the trial court properly applied the doctrine of *res judicata* and dismissed the amended 2016 petition. Hannah argues respondent-Legan's statement pertaining to the request to dismiss the second 2011 petition contains a prior judicial admission relevant to this appeal. When determining whether any statement constitutes a judicial admission, our review is *de novo*. *Crittenden v. Cook County Comm'n on Human Rights*, 2012 IL App (1st) 112437, ¶¶ 45-48.

¶ 33    A judicial admission constitutes a clear, deliberate, unequivocal statement by a party about a concrete fact within that party's knowledge. *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). Hannah's motion to dismiss included the following language: "An action to

determine the existence of a father-child relationship can be brought by HANNAH, herself, pursuant to 750 ILCS 45/8 during the two year period of time after she reaches her majority." This proclamation by Hannah's counsel represents counsel's legal opinion, a conclusory statement.

¶ 34    Hannah directs our attention to a statement in respondent-Legan's "Response to Brief Regarding Representation of the Minor Child by Natural Guardian, Guardian Ad Litem and Child Representative" that contains the same broad legal conclusion as originally stated by Hannah's counsel. First, we reject Hannah's contention that this language rises to the level of a judicial admission by respondent-Legan. Second, respondent-Legan defeated Hannah's amended 2016 petition on grounds unrelated to the timeliness of Hannah's 2016 request to establish a third parent-child relationship following her eighteenth birthday.

¶ 35    Consequently, we conclude respondent-Legan was not precluded from raising the issue of *res judicata* and affirm the trial court's ruling on this issue.

¶ 36                                    CONCLUSION
¶ 37    The judgment of the circuit court of Peoria County is affirmed.

¶ 38    Affirmed.