2023 IL App (1st) 221060-U

SIXTH DIVISION
July 28, 2023

No. 1-22-1060

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| In re the Marriage of | ) | |
| | ) | Appeal from the |
| JILL CHANEN, | ) | Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | No. 2010 D 11791 |
| v. | ) | |
| | ) | The Honorable |
| BRUCE CHANEN, | ) | Michael A. Forti, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Mikva and Justice C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held:* The judgment of the circuit court is affirmed. The circuit court properly granted Bruce Chanen's Amended Motion to Assign Tax Liability. Under the terms of the Marital Settlement Agreement, Bruce is entitled to be reimbursed for the income taxes he paid on the earnings in the children's educational accounts. *Res judicata* did not bar his motion.

¶ 2                          I. BACKGROUND

¶ 3    Jill and Bruce Chanen were married on October 11, 1993. Their son, A.C., was born in 1999, and their daughter, S.C., was born in 2000. On December 6, 2010, Jill filed a petition for

dissolution of marriage. Bruce filed a counter-petition on December 17, 2010. After years of negotiations, the parties reached a settlement, which was detailed in a Marital Settlement Agreement (MSA). On February 13, 2013, the judgment for dissolution of marriage was entered, which incorporated the parties' MSA.

¶ 4     Article III of the MSA is titled "Personal Property and Non-Retirement Accounts." Paragraph A states that "Jill shall receive the property and accounts identified in Exhibit A." Paragraph B states that "Bruce shall receive all property and accounts identified in Exhibit B." Paragraph C states,

> "The accounts currently in the name of each child, if any, shall remain in the name of each child. These accounts shall be applied toward the Section 513 post high school education expenses for a child prior to addressing each party's respective contribution, if any, toward same **** These accounts along with other accounts being set aside for the children's Section 513 Accounts are set forth in Exhibit C. To the extent possible both parties' names will be added as co-guardians, and the funds will be divided equally between the two children. No withdrawals shall be made from any of the accounts without the other party's written approval."

¶ 5     Exhibit C, titled "Children's Accounts," identifies three accounts: the Vanguard 500 Index Account, and the Bright Start Savings ASC & SSC Accounts. This issue presented here is tax liability for the substantial earnings in the Vanguard account only, which we understand are taxable unlike the earnings in the Bright Start accounts.

¶ 6     Article VII of the MSA, titled "Marital Indebtedness," states that each party will be solely responsible for any debt incurred in his or her name. Paragraph D states,

2

"Any debts or obligations of the parties not expressly provided for in this Agreement ***

shall be assumed by the party to whom any such asset is allocated or who incurred such

debt or obligation, regardless of when it was incurred or whether it is or was in the nature

of a family expense."

¶ 7      Article X of the MSA is titled "Post Secondary Education of Child." Paragraph A states

that the "children's accounts" listed in Exhibit C "shall be used first and exhausted before either

party may be obligated to provide additional support from his or her respective incomes or assets

for the child's college education expenses." It goes on, "Once the child's accounts, assets, and the

like are exhausted, the payment of all remaining costs and expenses incident to the child's post-

high school education, if any, shall be determined in accordance with the provisions of Section

513 of the Illinois Marriage and Dissolution Act." In addition, it states that "[i]n the event the

parties cannot agree upon any issue related to a child's education, said issue shall be submitted to

a court of competent jurisdiction for determination upon proper notice, petition, and hearing."

Finally, paragraph C states, "neither party shall have an obligation to pay any expenses as set forth

in this Article until all *** trust funds or other monies designated for each child's educational

expenses have been exhausted."

¶ 8      At a prove-up hearing on February 13, 2013, Jill testified that the money set aside for

college expenses in the three accounts identified in Exhibit C was "solely for the use" of the

children and that neither she nor Bruce could use the funds without the other's permission.

¶ 9      On January 14, 2019, the court approved an order regarding the parties' agreement to

modify Bruce's child support payments and Jill's request for retroactive child support. Paragraph

6 of the court's order states, "All financial issues are resolved through the date of this Order, and

each party acknowledges that neither will have a claim against the other for financial issues arising under the terms of the Judgment that predate this order."

¶ 10    On April 12, 2019, Bruce filed a Motion to Assign Tax Liability. He stated that the MSA was silent as to tax liability for the earnings in the Vanguard account. He stated that he had historically paid the income taxes for this account and that he had asked Jill if he could reimburse himself from the educational account or obtain a contribution from her, but she had refused. He asked the court to either allow him to reimburse himself for taxes paid from the children's educational account or to have Jill partially reimburse him.

¶ 11    On January 21, 2020, Jill filed a motion to dismiss Bruce's motion. She argued that Bruce's motion was an improper attempt to modify the judgment. She argued that under the terms of the MSA, Bruce was responsible for any debts he had incurred and that because his name was on the Vanguard account, the tax liability on the earnings for that account was his alone. Jill alternatively argued that Bruce's motion was barred by the doctrine of *res judicata* based on language in the court's January 14, 2019, order, resolving "all financial issues" and providing that "neither party will have a claim against the other for financial issues."

¶ 12    In response, Bruce argued that he was not seeking a modification of the MSA, but instead was asking the court to allocate tax liability for the dividends earned in the children's educational accounts because the MSA was silent on this issue. He argued that while the MSA made each party responsible for his or her own debts, the debt associated with the earnings on the children's educational accounts was not his. He also argued that his motion was not barred by *res judicata*, because the court's January 14, 2019, order was limited to child support issues.

¶ 13    The court denied Jill's motion to dismiss, and on June 30, 2021, Bruce filed an amended motion to allocate tax liability. In her response to Bruce's motion, Jill alleged that Bruce had used

the Vanguard account "for his own personal expenses." An evidentiary hearing was held on September 9, 2021. Bruce testified that his son had already graduated from college and that his daughter – who was 20 years old at the time – was enrolled in college. He said that he and Jill had set up the Vanguard account and the two Bright Start accounts during their marriage. Bruce said he selected the Vanguard account because it was a low-cost fund with proven performance. He noted that it had more than tripled in value since the divorce, and that the balance was still over $200,000. Bruce testified that he never used the money in the children's accounts for any expenses unrelated to his children's college education. Bruce had reported the income earned from the Vanguard account on his own tax return every year since 2013, the year he started filing independently, and said he did not seek relief in court earlier because the amount of taxes in the first few years was not worth the cost of litigation. Bruce said he asked Jill if he could pay the taxes from the funds in the Vanguard account or if she would contribute, but she refused. Bruce said there was no provision in the MSA which made him or Jill responsible for the taxes on the children's educational accounts. He said he had already paid $41,698 in taxes on the earnings in the Vanguard account, and pointed out that if he was reimbursed from the Vanguard account for the taxes he had already paid, there would still be enough money in the account to pay for the remainder of his daughter's undergraduate education.

¶ 14    Jill testified that she understood that under the terms of the MSA, neither she nor the children "would shoulder those tax burdens" from the children's educational accounts but admitted that she could not identify any provision in the MSA that expressly made Bruce responsible for the taxes on the children's educational accounts. She said she believed that the taxes were solely Bruce's responsibility because his name was on the Vanguard account and he was the only one who could disburse funds from that account.

¶ 15 On June 24, 2022, the circuit court entered its memorandum opinion and order granting Bruce's Amended Motion to Assign Tax Liability. The court stated that it was "uncontested that the children's accounts are the Vanguard 500 Index Account and the Bright Start Savings Accounts" and that the MSA was "silent on the payment of taxes related to the children's accounts." The court rejected Jill's contention that Bruce was solely responsible for these taxes because his name was on the account, concluding that her argument was "premised on the erroneous assumption that those funds were Bruce's alone, and not for the benefit of the children." The court also noted that there was "no evidence that these accounts were used for anything but to pay for the children's post-high school education; nor was there any evidence that Bruce improperly used any of these funds for his own material gain." The court noted that it was "persuaded by [Bruce's] argument that a constructive trust has been created through the [MSA]" because the funds identified in Exhibit C were "set aside for the benefit of both children" and it was uncontested that "these funds would only be used for their college educations." It therefore found that it would be inequitable for Bruce to be solely and personally responsible for the income taxes on the earnings in the children's educational accounts because those funds were solely for the children's benefit. The court authorized Bruce to obtain reimbursement from the children's educational accounts for the taxes he had already paid on the Vanguard account from 2013 to 2020. It also provided that in the future Bruce could reimburse himself for any additional tax liability on the Vanguard account.

¶ 16 The court rejected Jill's argument that Bruce's motion sought an improper modification of the MSA. Although Jill argued that requiring her to reimburse or contribute to a debt that was not in her name or incurred by her was "a clear request for a new or different obligation," the court pointed out that its ruling did not require her to contribute to the debt at all but instead permitted

6

Bruce to be reimbursed from the children's educational accounts. The court also rejected Jill's argument that the court's order was barred by *res judicata* based on the language in its 2019 order. It found that its order, "at most, only bars 'claim[s] against the other for financial issues arising under the terms of the judgment,'" and that because its decision did not require Jill "to contribute to a debt *** that was not incurred by her," *res judicata* did not apply. Jill timely appealed the court's order.

¶ 17                                        II. ANALYSIS

¶ 18    A. The Trial Court Properly Granted Bruce's Motion to Assign Tax Liability

¶ 19    Jill argues that the court erred when it granted Bruce's Motion to Assign Tax Liability under the MSA and allowed Bruce to be reimbursed with funds from the children's educational accounts for the income taxes he paid on the earnings in the Vanguard account. She argues that the plain, unambiguous language of the MSA requires Bruce to pay the taxes for the Vanguard account. Bruce conversely argues that because the MSA is silent on the issue of tax liability for the children's educational accounts and because the "money held in trust for the children's education is not [his] account" or his responsibility, the trial court correctly concluded that he could be reimbursed using funds from the children's educational accounts.

¶ 20    We review *de novo* the trial court's interpretation of a marital settlement agreement. *Blum v. Koster,* 235 Ill. 2d 21, 33 (2009); *In re Marriage of Dundas,* 355 Ill. App. 3d 423, 426 (2005). "Marital settlement agreements are contracts and, therefore, the rules governing the interpretation of contracts apply." *In re Marriage of Lyman*, 2015 IL App (1st) 132832, ¶ 71.  When reviewing a contract, we seek to give effect to the parties' intent. *Allton v. Hintzsche*, 373 Ill. App. 3d 708, 711 (2007). "We look to the language of the contract to determine the parties' intent and construe the contract as a whole, 'viewing each provision in light of the other provisions.' " *Shapich v.*

*CIBC Bank USA*, 2018 IL App (1st) 172601, ¶ 18 (quoting *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011)). "No one clause, phrase or sentence determines the intent" of the parties, and "[n]one of the words are [to be] considered meaningless." *Diaz v. Home Federal Savings and Loan Association of Elgin*, 337 Ill. App. 3d 722, 727 (2002) (quoting *Warren-Boynton State Bank v. Wallbaum,* 123 Ill. 2d 429, 436 (1988)). "We cannot determine the parties' intent by looking at a provision in isolation or by looking at disparate, isolated portions of the contract." *In re Marriage of Grandt,* 2022 IL App (2d) 210648, ¶ 25. Instead, "[a] contract should be given a fair and reasonable interpretation based on consideration of all its language and provisions." *In re Marriage of Belk,* 239 Ill. App. 3d 806, 808 (1992).

¶ 21    When the terms of an agreement are clear and unambiguous, we give them their plain and ordinary meaning, and "the parties' intent must be determined from the language of the agreement alone." *State Farm Fire and Casualty Co. v. Watts Regulator Co.,* 2016 IL App (2d) 160275, ¶ 27. If, however, the language of the contract is ambiguous, "the parties' intent must be ascertained by examining the facts and circumstances surrounding the formation of the agreement." *Grandt,* 2022 IL App (2d) 210648, ¶ 19.

¶ 22    Jill argues that the language in the MSA unambiguously supports her position. She points specifically to Article VII of the MSA, which states that "each party will be solely responsible for any debt incurred in his or her name" and that "[a]ny *debts* or obligations of the parties not expressly provided for in this Agreement *** shall be assumed by the party to whom any such *asset* is allocated or who incurred such *debt* or obligation, regardless of when it was incurred or whether it was in the nature of a family expense." (Emphasis added.) She argues that because the children's educational accounts included in Exhibit C are in Bruce's name, any associated taxes are "the very type of debt that the parties went out of their way to explicitly define in the MSA."

Bruce argues in response that the language of the MSA is ambiguous because nothing in the document expressly addresses who will pay the taxes on the earnings in the children's educational accounts. He argues that because the children's educational accounts are not identified as his accounts on the MSA, he should not be liable for the debts associated with them and instead, those debts should be paid from the children's educational accounts or split between the parties.

¶ 23    As Bruce does not contend otherwise, we assume, without deciding, that the term "debt" in Article VII of the MSA includes income taxes on the earnings that accrued in the Vanguard account, an asset of the marital estate. We also assume that the term "asset" in the above-quoted provision of Article VII is a typographical error and that the parties intended to refer to "debt" where they said "asset." This latter assumption, however, in no way affects our decision.

¶ 24    Bruce and Jill agree that nothing in the MSA explicitly states who will be responsible for payment of taxes on earnings in the children's educational accounts. The MSA does state that "each party will be solely responsible for any debt incurred in his or her name" and the Vanguard account is technically in Bruce's name. However, the account is not designated as Bruce's personal property on Exhibit B and, instead, is identified in Exhibit C, which is titled "Children's Accounts." The MSA goes on to state that all funds in the children's educational accounts "will be divided equally between the two children" and that neither party is allowed to withdraw any funds from the children's educational accounts without the other party's consent. The MSA also states that "neither party shall have an obligation to pay any expenses [related to the children's post secondary education] until all *** trust funds or other monies designated for each child's educational expenses have been exhausted."

¶ 25    Although the MSA does not expressly state who is required to pay the taxes on the earnings in the children's educational accounts identified in Exhibit C, we find that the provisions of the

MSA, when viewed together, indicate that the parties did not intend for Bruce to be solely responsible for payment of taxes on the earnings in the children's educational accounts. Property was allocated to each party in Exhibits A and B, and the children's educational accounts, while in Bruce's name, were not allocated to him, but instead were identified separately on Exhibit C. The MSA states that the parties shall not be obligated to pay "any expenses" related to the children's education "until all *** trust funds or other monies *** have been exhausted." "Any expenses" include income tax on earnings in the children's educational accounts. See *Leslie Car Wash Corp. v. Department of Revenue*, 69 Ill. 2d 488, 492 (1978) (finding the words "any other expense whatsoever" to be "all-embracing in their scope"). We therefore find that the trial court correctly concluded that Bruce was entitled to be reimbursed for taxes he paid on the earnings in the children's educational accounts.

¶ 26     Jill argues that the court's decision was in improper modification of the terms of the MSA because Bruce was already "liable for [those debts] pursuant to the MSA." She argues that this case is like *Waggoner v. Waggoner,* 78 Ill. 2d 50, 54 (1979), where the court determined that it could not modify the terms of the parties' property settlement agreement. In *Waggoner*, the settlement agreement, which was incorporated into the parties' divorce decree, awarded the residence to the plaintiff "subject to the indebtednesses." *Id*. at 52. When plaintiff tried to sell the residence years later, she discovered there was a judgment lien on the property. *Id*. Afterwards, she filed a motion to amend the decree to clarify that she was to take title to the residence subject only to the first mortgage, but the court found that it lacked jurisdiction to grant her motion. *Id.* at 53-54. It noted that a section of the divorce act in effect at the time the divorce decree was entered did not allow for clarification or amendment of the property rights of parties after entry of the decree. *Id*. at 54.

¶ 27    We find *Wagonner* inapplicable because, here, Bruce did not ask the court to modify the terms of the MSA. Even if we did not find that the plain language of the MSA requiring that "any expenses" be paid from the children's educational accounts includes income tax on earnings related thereto, we would still reach the same result because we would merely be supplying a missing term – who was responsible for payment of the income taxes on the earnings in the children's educational accounts – not modifying the MSA, as Jill asserts. While a trial court "cannot alter, change or modify existing terms of a contract, or add new terms or conditions to which the parties do not appear to have assented," (*Thompson v. Gordon*, 241 Ill. 2d at 449), "[i]t is not necessary for a contract to specify all details to be enforceable." *In re Marriage of Schmidt,* 292 Ill. App. 3d 229, 235 (1997). Instead, the contract must "provide enough information so the details can be determined from the contract." *Id*. If parties "have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." *Sieden Law Group, P.C. v. Segal,* 2021 IL App (1st) 200877, ¶ 17 (quoting Restatement (Second) of Contracts § 204 (1981)).

¶ 28    Bruce asserts that this case is more like *In re Marriage of Schmidt,* 292 Ill. App. 3d 229, 231 (1997), where the parties entered into a settlement agreement under which they agreed to divide the cost of their child's college education equally. However, after their child graduated and decided to attend a private university, the father argued that he should not have to pay one-half of the tuition at any college she desired, just one-half of the cost of reasonable tuition at an in-state school. *Id.* at 233. The trial court agreed and concluded that the father could only be held responsible for one-half of tuition and costs at a state school. *Id.* at 234. On appeal, the child's mother argued that because the language of the settlement agreement was unambiguous as to the father's obligation to pay half the costs of college, the court's decision was an improper

"modification" of the agreement. *Id.* The court disagreed, finding that the trial court merely "implied a reasonable price term in interpreting the contract in order to enforce it." *Id.* at 237. It concluded that this was not a modification of the earlier settlement agreement, but merely an interpretation. *Id.*

¶ 29    Even if the express language of the MSA did not support Bruce's position, we would find that the trial court's decision here – much like the trial court's decision in *Schmidt* – was not a modification, but an interpretation of the MSA. Although the MSA detailed each party's allocation of personal property and indicated that each party would be responsible for his or her own debts, it said nothing about who would be responsible for payment of any debts tied to the children's educational accounts. What the MSA does state is that "neither party shall have an obligation to pay any expenses [related to the children's post secondary education] until all *** trust funds or other monies designated for each child's educational expenses have been exhausted," and that the funds in the children's educational accounts "shall be used first and exhausted before either party may be obligated to provide additional support from his or her respective incomes or assets for the child's college education expenses." Based on the language in the MSA, we find that the trial court's decision–that Bruce was entitled to be reimbursed for the taxes paid on the earnings in the children's educational accounts from the funds in those accounts–represents an interpretation of the MSA by implying a reasonable missing term. Moreover, no modification occurred because Jill was not required to shoulder any additional debts or obligations because of the trial court's decision. See *In re Marriage of Figliulo,* 2015 IL App (1st) 140290, ¶ 12 (finding that a party seeks enforcement, not modification, of an order when it "requests a determination of the parties' rights and obligations with respect to the terms [of the order], as opposed to the imposition of new or different obligations on the parties").

¶ 30    We find further support for our decision based on the law of constructive trusts. Bruce argues that "a constructive trust has been created through the [MSA]" because the funds identified in Exhibit C were "set aside for the benefit of both children" and it was uncontested that "these funds would only be used for their college educations." Jill argues that the trial court erred because "[s]ome form of wrongdoing is a prerequisite to the imposition of a constructive trust" which is not present here. "A constructive trust may be imposed when one party receives property belonging to another under circumstances in which the receiver would be unjustly enriched if allowed to retain the property." *In re Estate of Beckhart,* 371 Ill. App. 3d 1165, 1169 (2007). To establish a constructive trust, a party must prove that (1) there is a specific, identifiable property upon which the constructive trust can be imposed and (2) the property is in the possession of a person who is charged as the constructive trustee. *Indeck Energy Services, Inc. v. DePodesta*, 2021 IL 125733, ¶ 60. While some form of wrongdoing is generally a prerequisite to imposing a constructive trust, it is not a necessary element. *Jackson v. Callan Publishing, Inc.,* 2021 IL App (1st) 191458, ¶ 203. See also *In re Estate of Wallen,* 262 Ill. App. 3d 61, 73 (1994) ("it is not always necessary that fraud or a breach of a fiduciary duty relationship be present to impose [a constructive] trust"). Here, the three accounts identified in Exhibit C and designated the "children's accounts" were expressly "set aside" for their education. Bruce was listed as a "guardian" for the Vanguard account, and the MSA specified that the funds in the children's educational accounts "will be divided equally between the two children," and that "no withdrawals shall be made" without both parties' consent. Because these accounts were expressly set aside for the children and Bruce was merely the "guardian" of these funds, we find that the court's conclusion–that these funds were essentially held in trust for the children and that it would be inequitable for Bruce to be solely and

personally responsible for the taxes on the earnings in the children's educational accounts–was a reasonable one.

¶ 31    Jill argues that if Bruce did not want to be solely responsible for paying the taxes on the children's educational accounts, he should have added her name to the Vanguard account or moved the funds into a joint account, and that by failing to do so here, he "waiv[ed] any theoretical rights to reimbursement." Jill relies on *In re Marriage of Saheb and Khazal,* 377 Ill. App. 3d 615, 629 (2007), for the general proposition that a party who "procures, invites or acquiesces" to a trial court's ruling "cannot contest the ruling on appeal." But that is not what Bruce did here. While the MSA states that "[t]o the extent possible both parties['] names will be added as co-guardians" to the children's educational accounts, Bruce testified, without contradiction, that he *could not* add Jill's name to the Vanguard account because "Vanguard doesn't allow adding of a name on an account." Ultimately, we do not find that Bruce somehow waived his right to be reimbursed for the taxes he paid on the children's educational accounts because he failed to add Jill to the Vanguard account or to move the funds into a new tax-advantaged account. Instead, we find that the court's decision to allow Bruce to be reimbursed is firmly supported by the plain language in the MSA, which, again, states that "neither party shall have an obligation to pay any expenses [related to the children's post secondary education] until all *** trust funds or other monies designated for each child's educational expenses have been exhausted." "Any expenses" include income tax on the earnings in the Vanguard account.

¶ 32    B. *Res Judicata* Does Not Bar Bruce's Amended Motion to Assign Tax Liability

¶ 33    Jill next argues that Bruce's Amended Motion to Assign Tax Liability is barred by the court's 2019 order under the doctrine of *res judicata*. The issue of whether res judicata applies to

bar litigation is a question of law that this court reviews *de novo*. *Buchanan v. Legan*, 2017 IL App (3d) 170037, ¶ 22.

¶ 34    *Res judicata* serves to prevent the relitigation of issues that could have been decided or those that have already been decided. *Id*. The doctrine's purpose is to promote judicial economy and to protect defendants from the burden of having to relitigate essentially the same claim. *Richter v. Prairie Farms Dairy, Inc.,* 2016 IL 119518, ¶ 21. For *res judicata* to apply, three requirements must be met: there must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of the parties. *Rein v. David A. Noyes & Co.,* 172 Ill. 2d 325, 335 (1996). The party seeking to apply *res judicata* has the burden of proof and must "show with clarity and certainty the parties, the precise issues, and the judgment of the former action." *Currie v. Wisconsin Cent., Ltd.,* 2011 IL App (1st) 103095, ¶ 28 (quoting *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.,* 189 Ill. App. 3d 638, 650 (1989)). Under the transactional test adopted by our supreme court to determine whether an identity of cause of action exists, "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts." *River Park, Inc., v. City of Highland Park,* 184 Ill. 2d 290, 311 (1998). The court asks: (i) Are the facts that support the two claims related in time, space, origin, or motivation? (ii) Do they form a convenient trial unit? (iii) Will treating them as a unit conform to the parties' expectations or business understanding or usage? *Id.* at 312.

¶ 35    As an initial matter, Bruce argues that because the court's 2019 order was an agreed order between the parties, it is not a final judgment on the merits that would allow the doctrine of *res judicata* to apply. Illinois courts are split on the issue of whether an agreed order constitutes a disposition on the merits for *res judicata* purposes. *Currie v. Wisconsin Central Ltd.,* 2011 IL App (1st) 103095, ¶ 29. In *In re Marriage of Watkins*, the court held that it does not because "[a]n

agreed order adopted by the court is not an adjudication of the parties' rights but, rather, a record of their private, contractual agreement." 2017 IL App (3d) 160645, ¶ 28. In *Elliott v. LRSL Enterprises, Inc.,* by contrast, the court held that "an order entered by consent of the parties operates to the same extent for purposes of *res judicata* as a judgment entered after contest, because it is conclusive with respect to the matters settled by the order, judgment, or decree. Any other interpretation would effectually nullify all settlements because the same claim would be subject to the possibility of future litigation." 226 Ill. App. 3d 724, 728 (1992) (internal citation omitted).

¶ 36 Assuming, without deciding, that the agreed upon 2019 order is a final judgment for purposes of the *res judicata*, Jill still bears the burden of proving that Bruce's Motion to Assign Tax Liability presents the same cause of action as the parties' child support motions that gave rise to the 2019 agreed order. Jill argues that because the language in paragraph 6 of the court's 2019 order states that "all financial issues are resolved through the date of this Order, and each party acknowledges that neither will have a claim against the other for financial issues arising under the terms of the Judgment that predate this Order," *all* financial issues between the parties were resolved and thus Bruce's subsequent Motion to Assign Tax Liability was barred by *res judicata*. Jill does not otherwise attempt to explain why the parties' post-dissolution child support motions and Bruce's motion to assign tax liability are the same cause of action. Bruce argues in response that because the 2019 order solely addressed discrete child support issues and never reached the issue of tax liability for the earnings on the children's educational accounts or required the court to interpret the MSA, *res judicata* does not apply.

¶ 37 We find that *res judicata* does not apply here because the parties' post-dissolution child support motions that gave rise to the court's 2019 agreed order and Bruce's Motion to Assign Tax Liability are not the same cause of action. The court's 2019 order solely addressed Bruce's motion

to modify child support and Jill's motion for retroactive child support. Jill requested retroactive child support based on Bruce's increased income as well as additional contributions towards living expenses during the time their son was home from college, and Bruce asked the court to terminate his child support payments for their son because he had emancipated. Bruce's Motion to Assign Tax Liability, by contrast, involved the discrete issue of who was responsible for payment of taxes on the earnings in the children's educational accounts. Although the court's 2019 order included broad language, indicating that "neither [party] will have a claim against the other for financial issues arising under the terms of the Judgment that predate this Order," it never addressed the issue of tax liability or interpreted the provisions of the MSA regarding the children's educational accounts. To be sure, the parties' child support motions did not raise the question of who was responsible for tax liability on the earnings in the children's educational accounts.

¶ 38     Moreover, Jill's argument that the 2019 order has *res judicata* effect is hopelessly flawed because it is the pleading (or in this case the parties' post-dissolution child support motions and Bruce's Motion to Assign Tax Liability) that must be examined to determine whether an identity of cause of action exists. The 2019 order disposing of the parties' child support motions is not relevant. Moreover, the language Jill relies on in the 2019 order is in the nature of a release from liability, a concept that is distinct from the doctrine of *res judicata*.  For this reason, we do not find that the parties' post-dissolution child support motions and Bruce's Motion to Assign Tax Liability constitute the same cause of action for purposes of *res judicata.* See *Murneigh v. Gainer*, 177 Ill. 2d 287, 301 (1997) ("[r]es judicata should not be applied to preclude a party from litigating the central issue in a second suit where such issue was not adjudicated in the first suit, because it was not considered essential to the disposition of the issues then pending before the court").  Hence, Bruce's Motion to Assign Tax Liability was not barred by the doctrine of *res judicata*.

¶ 39                               III. CONCLUSION

¶ 40    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 41    Affirmed.